LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty of forgery in the second degree. The court fixed his punishment at imprisonment for three years and sentenced him accordingly.
The evidence does not show that the defendant as principal forged, or uttered or published as true, the instruments set forth in the indictment. The State has made no contention that he acted as principal in the commission of the alleged crime. A major issue presented on appeal and on the trial is as to appellant’s guilt as an aider or abettor of the one who, according to the evidence, committed the crime.
There was undisputed evidence that on September 19, 1978, about 2:00 P.M., the defendant, a male, and a female companion came into the store known as Quarterly West, at 2600 Twelfth Avenue North in Birmingham and commenced looking at men’s leather jackets. The defendant tried on several of the jackets. Thereafter, defendant’s companion took the jacket to the sales counter and presented a Visa credit card with the name of Ruth Rupert thereon as the name of the person to whom the card was issued. The card had been in the billfold in the purse of the owner, Henrietta Ruth Rupert, until about noon the same day when someone, without the knowledge or consent of the owner, took the billfold from the purse. The price of the leather jacket was $73.14. The owner of the store took the credit card and called the bank that issued it for verification. Before verification of the credit card was obtained, the operator of the store prepared a “SALES-SLIP” for the signature of the customer. Defendant’s female companion signed the sales slip as “Hanrietta Rampton.”
While the store owner and defendant’s companion were awaiting word from the bank before delivery of the merchandise for about twenty-five minutes, defendant and his companion remained together at that part of the store where the transaction occurred. They were seated a large part of the time.
About twenty-five minutes after the credit card was presented to the owner of the store, two employees of the bank issuing the card arrived at the store. One of them inquired of the owner as to who was using the credit card. When he did so, a scuffle took place, in which defendant’s companion reached in her purse, which was immediately seized by one of the men from the bank and in which was a pistol. Almost simultaneously the other man from the *319 bank presented his ID badge to the defendant. According to the testimony of said employee of the bank:
“A. Certainly. I approached him face on, had my identification in my left hand and he brushed my right side as he attempted to leave. And at the time, he was detained.
“Q. Did you grab hold of him at that time?
“A. Yes, sir.
“Q. How many steps, in your best judgment, had he made prior to your grabbing hold of him?
“A. Towards me?
“Q. Yes, sir.
“A. Probably a step and a half.
“Q. Would that also be in the direction of the door?
“A. Yes, sir. I was between him and the door.
“Q. Did you then grab hold of him?
“A. Yes, sir.
“Q. What happened after that, please, sir?
“A. I wrestled him to the floor. At the same time, Mr. Upshaw brought to my attention that he had taken a weapon from the other person, and he assisted in the detaining of Mr. Williams.
“Q. Did you all handcuff Mr. Williams?
“A. Yes, sir.
“Q. Was this prior to any Birmingham Police Officer coming?
“A. Yes, sir, it was.
“Q. Shortly after that, did some police officers arrive there at the scene?
“A. Yes, sir, they did.”
No witness testified on call of the defendant.
In support of his position that the evidence was not sufficient to support a finding of the jury that defendant aided or abetted the principal in the commission of the crime, appellant well argues that he could have been innocent. We agree that he could have been, and the evidence of guilt, purely circumstantial, was not conclusive thereof, but we believe it to be substantial, which justified the submission to the jury of the issue as to defendant’s guilt or innocence. We consider it to be sufficiently strong, although not conclusive, to justify action of the trial court in overruling defendant’s motion for a new trial. In his favor are his right to remain silent and his freedom from any duty to prove his innocence, but weighing heavily against him are the apparent closeness of the relationship between him and the person who, according to the undisputed evidence, was guilty as principal of the crime charged, the apparent awareness on the part of defendant of what was taking place between his companion and the owner of the store, the fact that the jacket was to have been purchased for the defendant himself and defendant’s effort to flee when it became obvious that his companion was in the process of being apprehended in the commission of the crime.
Appellant contends, as he did on the trial, that the court should have granted defendant’s motion for a mistrial based upon the fact that an assistant district attorney, not actually engaged in the prosecution of the instant case, had a conversation with a member of the jury during the course of the trial, while the jurors were in recess and unsequestered. As soon as the matter was brought to his attention, the trial judge conducted a hearing as to what had occurred, and it was determined that the juror initiated a conversation with the assistant district attorney and another, relative to another case that had been disposed of before another judge in another division of the court, and that no part of such conversation was related in any way to the instant case. It was a brief conversation lasting no more than about sixty seconds. There was no contention of any conscious impropriety as to the conversation. Movant made it clear that he was relying upon the asserted proposition that a conversation between any juror trying a criminal case and a member of the “District Attorney’s staff is unauthorized and improper whether or not the subject matter of conversation is the trial or issues upon which the juror is sitting.” The court had instructed the jury *320 in declaring the particular recess, “Don’t talk to anyone and don’t let anyone talk to you. If you will be back in the jury room at 1:15.”
We are confident that the particular instruction was not intended to be as strict as defendant-appellant interprets it. The instruction was given just before a “luncheon break,” which could hardly have been absolutely complied with literally with due regard for a satisfactory lunch. Defendant presented no valid ground for a mistrial, and the court correctly overruled the motion therefor.
During the argument to the jury of counsel for the State, the following occurred:
“There is a very simple reason why Tony Williams didn’t walk up there and present this credit card, this is a Ruth Rupert. And Tony may get by with a lot, but he is not going to be able to get by with being a Ruth Rupert. He is not that dumb. He is not that dumb—Jeanetta Rakestraw—that’s the reason he did not walk up there and present that credit card and say I want to charge this, it belonged to a female. Because they had stolen a female’s credit card.
“MR. POLSON: Now, Judge, I am going to get and move for a mistrial. Mr. Col-lee has said that they just stole a female’s credit card. There is no evidence in this case of theft, there is not even a charge of theft.
“THE COURT: I sustain your objection.
“MR. POLSON: I move for a mistrial.
“THE COURT: Overruled. Members of the jury, you are not to consider that. There is no evidence of that and that is not the charge in this ease. I sustain your objection, Mr. Poison, on that point. Do you understand that, Ladies and Gentlemen? You are not concerned with any stealing of the credit card.”
The argument of counsel for the State falls far short of such highly prejudicial argument that is so ineradicable as to require a mistrial.
Appellant asserts as error the ruling of the court denying defendant’s motion for a mistrial based on another portion of the argument of the counsel for the State as follows:
“MR. COLLEE: If Tony Williams is so innocent why was Jeanetta Rakestraw reaching into her purse trying to pull out a gun when Mr. Meredith was trying to hold this defendant down and the other Mr. Upshaw was also trying to get Mr. Meredith to help—
“MR. POLSON: Judge, I am going to object, there is no evidence at all that the young lady reached for a gun. In fact, there is evidence to the contrary.
“THE COURT: All right. Members of the jury, rely upon what you heard as evidence in that matter.
“MR. COLLEE: And it just so happens that Mr. Pat Upshaw turned around at the last second and saw her fishing in that purse and snatched it out of her hand, or we might have been here for something else.
“MR. POLSON: Now, Judge, I object and move for a mistrial on that basis.

“THE COURT: Well, I sustain the objection.
“MR. POLSON: Well, Judge, I move for a mistrial.
“THE COURT: Overruled. Disregard the remark, Ladies and Gentlemen.”
The court and defense counsel are to be commended for keeping the argument of counsel for the State in line with the issues in the case being tried, but his argument did not furnish a valid ground for a mistrial.
Appellant assigns as error the court’s action in overruling defendant’s objection to the following argument of State’s counsel:
“And, Mr. Meredith went over to this defendant right here and the first thing he said—I believe this was Mr. Meredith, let me make sure—he said T am a bank security officer, let me see your identification.’ And Mr. Meredith told this defendant right here and this innocent man *321 that knows nothing about what’s going on makes a break for it. Ladies and gentlemen, I suggest the Judge will tell you this, that when you are considering the facts put together in this conspiracy, you can consider that that’s flight.”
Counsel for defendant then said:
“Now, Judge, I am going to object to any argument about flight. There is no evidence of flight in this case. And it wouldn’t apply to this situation in any event. I object to it, it is prejudicial. The definition of flight has nothing to do with this case, the legal definition of flight.
Perhaps the last sentence of the quoted argument was objectionable. We say this in light of the fact that the, court did not instruct the jury as suggested by that sentence. However, it appears that the defendant’s objection was not addressed to the last sentence of the quoted argument, or at least it was not addressed directly and solely to that sentence, but “to any argument about flight.” Although the word “flight” was first used by counsel for the State in the third sentence of the quoted argument, it is obvious that he was using the word in connection with what he had just said in the second sentence of said argument as to defendant’s making “a break for it.” The evidence to the effect that at the time the two men from the bank came to the store to inquire as to the party or parties who had presented the credit card the defendant attempted to leave under the circumstances shown by the evidence as briefly narrated above furnished valid ground for the argument of State’s counsel on the subject. The court’s action in overruling defendant’s objection was not erroneous.
Appellant’s final contention is based on the refusal by the trial court of two written charges requested by defendant, numbered 1 and 2. The trial court refused each charge on the ground that it was illegible. Upon our review of a photocopy of each of the charges, we do not question the correctness of the trial judge’s conclusion as to the legibility of each charge. However, after having spent more time than a trial judge usually has to pass upon charges requested of him and with an opportunity to read the cases cited by defendant-appellant in support of the charges respectively, we have been able to determine with reasonable certainty what each charge states. Charge 1 states:
“I charge you ladies and gentlemen that knowledge that another contemplates doing an illegal act does not make one a coconspirator unless he assists other.”
The language is precisely the language of headnote 2 in United States v. Russel], 41 F.2d 852 (S.D.Ala.1930). Except for the grammar flaw to be found in the use of the word “other” instead of the words “the other,” the charge contains a correct principle of law. Even so, it does not follow that it should be given when requested in every case when defendant is sought to be held criminally liable as a coconspirator, or as an aider, abettor or accomplice of a person committing a crime as the principal. In the circumstances of some cases, and in those of the instant case, the use of the word “assists” in the charge could be readily but erroneously interpreted by the jury to require express language or active positive conduct on the part of the defendant. The “assistance” that is necessary and sufficient may be shown by the presence of the defendant with intent to render assistance if necessary if the principal knows that defendant is present at the time and that he intends to render assistance if necessary. Radke v. State, 292 Ala. 290, 293 So.2d 314 (1974); McCovery v. State, Ala.Cr.App., 365 So.2d 358 (1978). The refusal of defendant’s requested charge 1 was not erroneous.
 Defendant’s charge 2 states:
“A person’s mere presence at time and place of another’s commission of a felony with intent to give aid therein, if necessary is not ‘aiding or abetting’ commission thereof in absence of prearrangement or preconcert unless principal knows of such person’s presence with such intent.”
The language is that of headnote 2 in Davis v. State, 36 Ala.App. 573, 62 So.2d 224, cert. *322 denied 258 Ala. 281, 62 So.2d 229 (1953). The language is substantially supported by the text of the opinion, and we find no fault with it. However, it, like many other general principles of law, can become misleading to a jury in the particular circumstances of some cases. Although the words “prearrangement” and “preconcert” are often correctly used in connection with the subject of criminal liability of conspirators, aiders, abettors and accomplices of principals in the commission of crimes, they are not to be interpreted to the preclusion of the principle that no definite period of time for the meeting of the minds of the principal and the defendant is requisite. As otherwise correctly stated, with general unanimity of view of the authorities, the qualifying assistance may be rendered by the defendant by the encouragement or support he gives the principal by his presence if, with the knowledge of the principal, the defendant intends to render assistance if necessary and there is an arrangement or agreement between the two parties accordingly, even though the arrangement is made “on the spur of the moment.” Scott v. State, 374 So.2d 316 (Ala.1979); Watkins v. State, Ala.Cr.App., 357 So.2d 156, cert. denied, Ex parte State, 357 So.2d 161 (Ala.1977). The court in its oral charge included ample instructions as to the criminal liability of an accused as an aider, abettor or conspirator. It said, inter alia :
“When by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator. And if the purpose is carried out, each is guilty of the offense committed whether he did any overt act or not.

“Presence alone is insufficient to establish participation in a conspiracy.”
The court was not in error in refusing defendant’s requested charge 2.
Although apparently not raised on the trial or on appeal, we think it should be noted that notwithstanding the categorization of the crime of which defendant was convicted as “forgery in the second degree,” such name is perhaps strictly speaking not warranted. The incident occurred during the time between the enactment of the Alabama Criminal Code, Acts 1977, No. 607, approved May 16, 1977, and its ultimately effective date of January 1, 1980, in which is found in § 13A-9-14 Commentary:
“Section 13 — 4—32(f) is a credit card forgery offense amply covered by the new section on forgery in the second degree, § 13A-9-3(a)(l).”
According to § 13A-9-3(b), “Forgery in the second degree is a Class C felony.” § 13A-5-6(a)(3) prescribes punishment for a Class C felony of not more than 10 years or less than 1 year and 1 day.
Although the indictment in this case largely followed the Code form of an indictment for forgery in the second degree (§ 15-8-150(58)), the offense actually charged in the indictment more nearly resembles the crime defined by Code of Alabama 1975 § 13-4-32(f) and (g) as follows in pertinent part:
“(f) Counterfeiting of credit card. — A person who, with intent to defraud a purported issuer, a person or organization providing money, goods, services or anything else of value or any other person, falsely makes or falsely embosses a purported credit card or alters such a credit card is guilty of counterfeiting a credit card and is subject to the penalties set forth in subsection (b) of section 13-4-40.

“(g) Signing credit card of another. — A person other than the card holder or a person authorized by him who signs a credit card, sales slip, sales draft or other instrument for the receipt of money, goods, services or anything else of value which evidences a credit card transaction violates this subsection and is subject to penalties set forth in subsection (b) of section 13 — 4-40. The name so signed may be that of the person so signing, the cardholder, another person or a fictitious person.”
Subsection (b) of section 13-4-40 provides, “A person who is subject to the penalties of *323 this subsection shall be imprisoned not more than 10 years.”
It is to be noted that the range of punishment for forgery in the second degree is essentially the same as the range of punishment prescribed for most of the offenses dealt with on the subject of “credit cards” in Article 2 of Chapter 4 (§ 13-4-30 through § 13—4-41 of Code of Alabama 1975), which Chapter 4 is captioned “Forgery and Fraudulent Practices.”
In the indictment, in following the Code form for forgery in the second degree, there were set out therein a photocopy of the stamp of identifying portions of the particular credit card involved and a photocopy of the sales slip for the leather jacket, with the purported signature thereon of defendant’s companion at the time of the transaction.
The sufficiency of the indictment was not challenged, and apparently the anomaly just discussed was not mentioned during the trial. Our consideration of it leads us to the conclusion that the rights of defendant have not been adversely affected by it, that the indictment substantially charged the crime for which he was tried and convicted, by whatever name it may properly be called, and that the punishment fixed was well within the statutory limits. Our reference to the matter is in order to assure all concerned that, in our quest for error prejudicial to defendant, we have not overlooked it.
In searching the record for error prejudicial to defendant, we have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.