Certiorari was granted to consider three issues: (1) whether the trial court committed reversible error by allowing the petitioner's inculpatory statement to be introduced as evidence; (2) whether the trial court's jury instruction on aiding and abetting was erroneous; and (3) whether the death penalty should be imposed under the guidelines imposed by Beckv. State, 396 So.2d 645 (Ala. 1981).
 I
The resolution of the first issue by the Court of Criminal Appeals, 435 So.2d 754, is correct. The facts of the accused's interrogation are correctly set forth in the opinion of that court. Two police officers were present when Womack's statement was given, after he had been advised of his Miranda rights. These officers testified that no threats, coercion, offers of reward or other inducements were made to Womack. When his statement was given to him, Womack was given the written version to read. He was asked if it was correct and he answered affirmatively, signing it after he had looked at both pages. Although petitioner contends that he signed the statement without knowledge of its contents because, he asserts, he cannot read,[1] the Court *Page 768 
of Criminal Appeals cited correctly cases holding that illiteracy, though a consideration, does not itself render a confession involuntary. See also Elrod v. State, 281 Ala. 331,202 So.2d 539 (1967). The facts surrounding the statement and its execution were exhaustively explored at the trial, and there is substantial evidence that the confession was voluntary, understood by the petitioner, and that the written version was knowingly signed by him. Thus, no error was committed by the trial court by allowing it into evidence.
 II
The petitioner was accompanied by one Johnson in the commission of the robbery and contended that Johnson, not he, presented the pistol and shot the victim. A witness, Jones, however, testified that while he was talking with petitioner at the corner of Goode and Early streets petitioner said, "I had to shoot the bitch in the face." Even so, in brief petitioner now argues that the complicity instructions given by the trial court were erroneous because they did not instruct that "mere presence with willingness to assist in the killing is sufficient only if that willingness is known to the principal." Petitioner cites Williams v. State, 403 So.2d 317 (Ala.Cr.App. 1981), for that proposition. Judge Clark in Williams, at 321, however, expressly recognized this charge on the assistance in abettor situations:
 "In the circumstances of some cases . . . the use of the word `assists' in the charge could be readily but erroneously interpreted by the jury to require express language or active positive conduct on the part of the defendant. The `assistance' that is necessary and sufficient may be shown by the presence of the defendant with intent to render assistance if necessary if the principal knows that defendant is present at the time and that he intends to render assistance if necessary." (Emphasis added.)
In other words, Judge Clark recognized that one could "assist" by actually assisting, i.e., giving affirmative assistance by words or deeds, etc., or by being present with an intent to assist known to the co-conspirator.
In this case the trial court charged:
 "The evidence in this case, or the testimony in this case, presented by the State indicated that either the Defendant or someone other than the Defendant fired the one shot which killed Mr. Bullock. So let me refresh you on the law of complicity, or aiding and abetting, again. In order to find this Defendant guilty of the capital offense as charged in this indictment, you must believe beyond a reasonable doubt from the evidence that while he was committing a robbery or attempting to commit a robbery or aiding and assisting another to commit a robbery or the attempt to commit a robbery, that he also either by prearrangement — that is, prearrangement or on the spur of the moment — helped, assisted by words, acts, or deeds, or was ready, willing, and able in seeing that Arthur Bullock was intentionally killed. In other words, just the contemplation of the robbery is not enough. He would also have to be implicated by affirmative action: words, assistance, deeds in the intentional killing of Arthur Bullock.
 "You must look to all of the surrounding facts and circumstances. You can't look into somebody's mind. To determine whether there was an intentional killing in this case, you must consider all of the facts and circumstances as you find them from the evidence in this case, and use your common sense in making that determination, and the inferences which naturally and logically spring from the evidence in this case to determine if this Defendant aided and abetted or participated in a robbery, as I have defined that crime of robbery to you, and also aided, assisted, helped, was ready, willing and able if it became necessary in the intentional killing of Arthur Bullock." *Page 769 
Petitioner made no objection as to the content of this charge; instead he merely asked for an instruction to the effect that the length of the charge did not reflect the wishes of the court. The court gave such a requested charge. Petitioner announced satisfied.
The problem is reduced to whether it was plain error under Rule 39 (k), A.R.A.P., for the trial court not to instruct that "assistance" required the other participant's (the principal's) knowledge that the defendant intended to render assistance if necessary.
The State argues that this was not "plain error" because the petitioner himself never indicated any reliance on such a defense; that is, instead of defending on the basis that he had no intent to kill but only to rob, his defense was alibi: he denied being present and denied any knowledge of the crime. Consequently, the State argues, and we agree, that the failure to charge the matter referred to above was not a "particularly egregious error" and would not result in a miscarriage of justice if a reversal was denied. That position follows UnitedStates v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 1592,71 L.Ed.2d 816 (1982), and the federal "plain error" rule as stated inUnited States v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981): "`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." In that case the court found no "plain error" in an evidentiary ruling after the defendants had failed during trial to assert a theory later argued on appeal. See also Rule 45A, A.R.A.P.
 III
Finally, the petitioner argues in brief (1) that the death sentence was improper, because there was insufficient evidence of the petitioner's intent to kill, and (2) that the death sentence was inappropriate because of disparity in its application. Our review, however, has convinced us that neither of these arguments has merit, and that the opinion of the Court of Criminal Appeals has correctly resolved each of those issues. That court has followed the mandate of this Court, as expressed in Beck v. State, 396 So.2d 645 (Ala. 1981), and determined that the death sentence imposed here is not out of line with sentences imposed in similar cases, e.g., Ex parteRitter v. State, 375 So.2d 270 (Ala. 1979); Raines v. State,429 So.2d 1111 (Ala. 1982), notwithstanding that the State of Alabama has chosen to discontinue for the time being the prosecution of the co-defendant, Johnson. Beck, supra, does not make the death penalty inappropriate for one defendant simply because his accomplice is not convicted.
For the reasons stated, the judgment of the Court of Criminal Appeals must be, and is, affirmed.
AFFIRMED.
All the Justices concur.
[1] A prison psychologist gave him an examination and testified that petitioner recognized ten letters in the alphabet and only two letters in his name. Based upon this, she felt Womack was not able to read.