Careful review of the entire record in this case shows that the Court of Criminal Appeals, 460 So.2d 317 (1983), accurately and precisely recited the evidence in its opinion. For that reason, we will only refer to those portions of the evidence necessary to a discussion of the issues for review. Reference to the opinion of the appellate court will provide any details which we need not discuss.
Thomas states the issues for review to be:
 "1. Whether the prosecution failed to prove that the underlying offense of robbery was the motive for the murder of the deceased.
 "2. Whether the court's charge to the jury as set out in the record (R 361), in light of the Beck decision, coerced the jury to reach a decision inconsistent with the guidelines set out in Beck.
 "3. Whether the due process clause of the United States Constitution was violated in that the Alabama Supreme Court judicially legislated a new offense by its reinstatement of the Beck decision.
 "4. Whether aggravating circumstances considered by the judge were not set out by the Code and whether consideration of these aggravating factors violates the Eighth and Fourteenth Amendments to the Constitution of the United States. Henry v. Wainwright, 661 F.2d 56 (58-59) (Fifth Circuit, 1981).
 "5. Whether robbery, the aggravating component, was not proved to have occurred by the State's evidence.
 "6. Whether the offense was proved to have been `especially heinous, atrocious and cruel' as an aggravating circumstance.
 "7. Whether appellant's sentence is proportionate when viewed in light of appellant's two co-defendants' sentences, i.e. life and life without parole."
Thomas contends the State failed to prove he robbed Quenette Shehane of a television set. He also argues that to the extent there was evidence of a robbery, the robbery was not sufficiently connected to the killing of Miss Shehane to warrant a capital conviction. Careful review of the entire record demonstrates there was a preponderance of evidence from which the jury could find that Thomas had intentionally killed Miss Shehane in the process of robbing her of a television set. *Page 219 
The evidence shows Miss Shehane left the presence of her fiance, one Ramsey Lane, to go to a store on the evening of 20 December 1976. When she left in her automobile there was a Sears portable television set in the car in her possession. While in a parking lot adjacent to the store she visited, she was forced into her car by Thomas and two accomplices, Jerry Lee Jones and Eddie Barnard, and was driven away. Those two followed in Jones's car and, later that evening, appellant called a friend to a store near the site where Miss Shehane's body and car were found and that same friend gave the appellant and his accomplices a ride. Jones's and Neal's appearance indicated they had been in a fight and were bloodstained. Appellant did not appear to have been and he was not bloodstained.
Miss Shehane's body was discovered early the next morning. She had been shot at least six times. When her car was found, the television set was not in it. A few days after the night she was robbed and killed, appellant gave his soon-to-be roommate Miss Shehane's television set to keep until school reopened. After appellant was arrested, he instructed that same roommate to dispose of the television set. There are two additional facts of importance: appellant had the pistol used to kill Quenette Shehane in his possession when he was arrested; and appellant left a partial palm print on Miss Shehane's car on the night he robbed and killed her. From all the evidence, but more particularly that stated above, it is clear that Thomas, through force or fear of force, took the victim's property from her possession with felonious intent. No citation of authority is needed to support the conclusion that the State proved every element of the capital offense as charged in the indictment: robbery when the victim is intentionally killed.
Regarding Thomas's contention that the trial court's charge to the jury, in light of Beck v. Alabama, 396 So.2d 645 (Ala. 1980) (on remand from the Supreme Court of the United States), coerced the jury to reach a decision inconsistent with the guidelines set out in Beck, supra, we will set out sufficient of that charge and proceedings incident to it which demonstrate this contention is without merit:
"(Jury present.)
 "THE COURT: Ms. Cunningham, does the jury have a report they would like to make to me? Do not tell me how you are split if there is a numerical division in your number.
"MS. CUNNINGHAM: Yes, it is.
 "THE COURT: Okay. We have spent the better part of two days trying this case. Witnesses have been brought in and told everything there is to be told about this case. The lawyers have done a fine job in presenting both sides of the case to you. Under the circumstances I'm going to recess you until 8:30 in the morning. Let's make it 9:00 in the morning. I have a docket to call. And let y'all come back in fresh and try your deliberation again. I feel two hours is too short a time deliberation to call a hung jury.
". . . .
"THE COURT: Do y'all have any exceptions?
"MR. HULTQUIST: No exceptions.
"MR. BARBER: No exceptions
"(Recess for evening.)"
Following day:
"(. . . . Jury not present.)
 "MR. HULTQUIST: Judge, there is a motion that I would like to make for the record. Based on our discussions yesterday as to what the law provided as to a verdict, I move that the jury not be allowed to continue with their deliberations. And as grounds for that, and I would also move that the defendant be sentenced under the Beck decision to a sentence of life without parole, and as grounds therefor, I would state the following: The Beck decision which set up the guidelines for this proceeding at this point indicates that if the jury states to the Court that they cannot reach a decision, the only alternative left for the Court to do is to sentence the defendant to a term of life without parole. *Page 220 
 "In this particular instance, if my recollection serves and the record will reflect that the jury has sent to the Court word, and has come out to the courtroom and has stated that they could not reach a verdict in this case. Under the Beck guidelines, it is my opinion, contention, that at the time the jury has in effect returned its verdict and therefore, the Court has no alternative but to sentence the defendant to a term of life without parole.
 "And further for the record, I'd like for it to be noted that the actual deliberations on the guilt determination took the jury approximately an hour and half, and the jury deliberated for a period of two hours, more or less a few minutes, yesterday afternoon before sending word that they could not reach a verdict. Therefore, I would state to the Court that if the jury is allowed to continue or ordered to continue to deliberate at this time, any verdict which they return would be an illegal verdict.
 "THE COURT: For the record, I am going to deny your motion. What I intend to do though, is to call the jury in and ask them and instruct them what the law is that if they cannot unanimously agree upon a penalty of death by electrocution, then out of necessity under Beck, the proper verdict for them to return would be life imprisonment without parole.
 "MR. HULTQUIST: I think, Your Honor, that further it was made clear by the Court yesterday in its instructions to the jury that if they could not reach a verdict that the Court would have no alternative but to sentence the defendant to a term of life without parole, and under those circumstances, what in effect the Court is saying is we reject your verdict. The jury — we don't know what goes on in the jury's mind, and perhaps that is —
"THE COURT: Are you making a motion or —
 "MR. HULTQUIST: Well, I'm just continuing my motion. I don't mean to argue with the Court, but I'm continuing my motion and state further grounds therefore, and we would therefore except to the Court's ruling.
 "THE COURT: I'm going to instruct them if they have gotten to a stage where they cannot agree on the sentence of death by electrocution, then the sentence they should return should be life imprisonment without parole.
 "MR. HULTQUIST: Will the Court further instruct them additionally, as it did yesterday, that if they cannot reach a verdict, then the Court will — then the verdict would be one of life without parole imposed by the Court.
"THE COURT: Yes. May I hear from the State on this?
 "MR. BARBER: Your Honor, it's our position that the jury has been instructed as to what they should do and that their indication — or what they should try to do in reaching a verdict — and their indication after an hour and fifty minutes of deliberation yesterday that they had not or could not reach a verdict does not necessitate any further instruction from this Court other than the decision of the Court either to let them to continue to deliberate or not to continue to deliberate. And if the Court lets them continue to deliberate, then that does not necessitate any further instruction, and if after a period of time passes that the Court feels that the jury is not able to reach a verdict of not guilty — I mean, a verdict of life without parole. It's simply the duty of the Court to discharge them and the Court to sentence him to a punishment of life without parole.
"THE COURT: Bring them in.
"(Jury present.)
 "THE COURT: Ladies and gentlement of the jury, I hope y'all had a pleasant evening and are rested. When I told you I wanted you to deliberate further, I am not trying to force you to get a verdict. There's one thing I feel like y'all might not have understood from my previous charge to you and I want to make this clear to you. *Page 221 
 "If the jury cannot agree on a unanimous sentence of death as the punishment, the alternative form of, we, the jury, find the punishment life imprisonment without parole would be what you would return. Did y'all understand that previously?
"JUROR: No, sir.
 "THE COURT: So, you have two possible forms you may return. One, is the death verdict form I have given you. If you cannot agree on that unanimously, then your verdict would be the life imprisonment without parole.
 "Do you have any questions or anything further I might be able to assist you in, in your deliberations at this time?
"(Indicating no.)
"THE COURT: Thank you.
"(Jury out for further deliberation.)
". . .
 "THE COURT: Ms. Cunningham, has the jury reached a verdict?
"MS. CUNNINGHAM: Yes, sir, Your Honor.
 "THE COURT: Would you hand the verdict to my deputy.
"THE COURT: Would you read the verdict.
 "THE CLERK: We, the Jury, fix the punishment of the defendant, Wallace Norrell Thomas at death. Gloria J. Cunningham, Forewoman.
"THE COURT: Do you wish the jury polled?
"MR. HULTQUIST: Yes, sir."
The clerk then read the verdict to the jury and asked each juror, by name, if the verdict was his or hers. To that question, each gave an affirmative answer.
The Court of Criminal Appeals correctly found:
 "The following morning, appellant moved `that the jury not be allowed to continue with their deliberations' and that he be sentenced under Beck v. State, to life imprisonment without parole. In support thereof, appellant argued that the previous afternoon the jury had stated to the trial court that it could not reach a decision as to a sentence recommendation and, thus, his request was proper under the guidelines of Beck v. State."
That court also correctly found:
 "Contrary to appellant's assertion at trial, the record does not reflect any statement by the jury that it could not reach a decision as to his [Thomas's] punishment. . . ."
As can be seen, when the trial was resumed the day following jury deliberations of from one to two hours the previous afternoon, the trial court further instructed the jury regarding the verdict to be returned failing unanimous agreement for the death penalty. After resuming deliberations, the jury did, in fact, unanimously agree to fix punishment at death. See above for the proceedings relating to this matter.
There was no occasion, at the time the jury reported an inability to agree after only, at best, two hours' deliberation, for the trial court to declare a mistrial. As the record reflects, the jury never reported it could not agree ona sentence of death; only that it was initially divided. It would be indeed unusual that twelve individuals brought together and called upon to decide whether Thomas should be executed or spared and confined for life without parole should do so after so short a period of time. It appears more logical to assume that after only two hours of deliberation the inability to return a unanimous verdict condemning Thomas to death reflects how seriously those individuals were performing the sworn duty to weigh the factors to be considered in determining whether Thomas should live or die. Certainly the record reflects no coercion upon the jury to reach the verdict it did; to the contrary, the able and learned trial judge exhibited a completely detached attitude and stated: "When I told you I wanted you to deliberate further, I am not trying to force you to get a verdict." The record is abundantly clear there was no pressure on the jury with regard to its reaching a unanimous verdict. We, as did the Court of Criminal *Page 222 
Appeals, find no merit in Thomas's contentions in this respect. For a remarkably similar case where the Supreme Court of the United States denied certiorari, see Jones v. State,381 So.2d 983 (Miss. 1980), cert. denied, 449 U.S. 1003, 101 S.Ct. 543,66 L.Ed.2d 300 (1980). It should be noted that Mississippi also has the rule that upon failure of the jury to unanimously agree to the sentence of death, a sentence of punishment short of death must be imposed. Cf. Jackson v. State, 337 So.2d 1242
(Miss. 1976), and Beck v. State, 396 So.2d 645 (Ala. 1980) (on remand from the Supreme Court of the United States). Finally, as to the issue relating to the additional instructions given the jury, those instructions were given pursuant to a request by appellant. We also note that fact, as did the Court of Criminal Appeals. If it was error (we opine it was not), then it was invited error concerning which Thomas is barred from asserting. E.g., Aldridge v. State, 278 Ala. 470, 179 So.2d 51
(1965), Ex parte Winston, 52 Ala. 419 (1875).
Thomas says this court's decision in Beck v. State,396 So.2d 645 (Ala. 1980), is in violation of the United States Constitution; therefore his retrial under the guidelines in that decision was not constitutionally permissible. These contentions are without merit, as evidenced by decisions of this court exemplified by the cases of Raines v. State,429 So.2d 1111 (Ala. 1982), cert denied, 460 U.S. 1103,103 S.Ct. 1804, 76 L.Ed.2d 368 (1983); and Potts v. State, 426 So.2d 896
(Ala. 1983).
Issue four for review, as contended by Thomas, is whether consideration of nonstatutory aggravating circumstances by the trial court, in determining aggravation and mitigation, violates the Eighth and Fourteenth Amendments to the Constitution of the United States.
After sentencing hearing, the trial court entered the following order:
 "The Court, having conducted a hearing pursuant to Title 13-11-6 of the Code of Alabama to determine whether or not the Court will sentence Wallace Norrell Thomas to death or to life imprisonment without parole, and the Court having considered the evidence presented at the trial and at said sentencing hearing, the Court makes the following findings of fact:
 "The Court first considers the aggravating circumstances as outlined and described in Title 13-11-6.
 "(1) The court finds that the capital offense was committed by Wallace Norrell Thomas while he was committing a robbery wherein the victim was intentionally killed by the Defendant. However, the Defendant, Wallace Norrell Thomas, was not under a sentence of imprisonment at the time;
 "(2) The Court finds no evidence that Mr. Thomas was previously convicted of another capital offense or another felony involving the use or threat of violence to the person;
 "(3) The Court finds that there is no evidence that the Defendant did knowingly create a great risk of death to many persons;
 "(4) The court finds the capital offense was committed while the Defendant was engaged in the commission of a robbery;
 "(5) The court finds the capital offense was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
 "(6) The Court finds that the capital offense was not committed for pecuniary gain;
 "(7) The Court finds the capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
 "(8) The Court finds the facts to be that the nude body of the victim, Quenette Shehane, was found in a wooded area during an extremely cold period. Her body bore the signs of trauma in that there were numerous abrasions, bruises, scratches and gunshot wounds. It was determined that the victim had been shot with a .22 caliber pistol one time in the chest, three times in the buttocks, and two times in the left elbow. *Page 223 
The above mentioned abrasions being found on her chest, abdomen and lower extremities. The victim's clothes did not have bullet holes in them, indicating that she was nude at the time she was shot. The Court finds that the killing of Quenette Shehane was outrageous and extremely wicked, vile and shockingly evil. The Court finds from the evidence that the victim was abused and tortured prior to her death. It is, therefore, the opinion of this Court that the Capital offense was especially heinous, atrocious or cruel compared to other capital offenses.
 "The Court finds beyond a reasonable doubt and to a moral certainty that the aggravating circumstances described in Title 13-11-6 and set out hereinabove in subparagraphs (4) and (8) apply to the Defendant, Wallace Norrell Thomas, in this case.
 "The Court now considers the mitigating circumstances as described and set out in Title 13-11-7, Code of Alabama.
 "(1) The Court finds that Mr. Thomas has no significant history of prior criminal activity;
 "(2) The Court finds that the capital offense itself was not committed while Mr. Thomas was under the influence of extreme mental or emotional disturbance;
 "(3) The Court finds that the victim was not a participant in Mr. Thomas's conduct and did not consent to the act.
 "(4) The Court finds that the Defendant was a leader as evidenced by his having been President of his college fraternity at the time the capital offense was committed. The Court finds that on January 28, 1977 when Mr. Thomas was arrested while committing another robbery that he had in his possession a .22 caliber pistol, which was determined at a later date to be the pistol from which the bullets removed from the victim's body had been fired. In addition, the Court further finds that the television which was the item taken during the robbery of the victim was in the actual or constructive possession of the Defendant. Therefore, the Court does not find that the Defendant was an accomplice in the capital offense committed by another person or that his particular participation was relatively minor. In fact, the Court finds the Defendant committed the robbery and the intentional killing;
 "(5) The Court finds that Mr. Thomas did not act under extreme duress or under the substantial domination of another person;
 "(6) The Court finds that the capacity of Mr. Thomas to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was not substantially impaired;
 "(7) The Court finds that Mr. Thomas was twenty-two years of age at the time this capital offense was committed, but the Court finds his age is not a mitigating circumstance.
 "The Court having considered the statutory mitigating circumstances and, in addition, having listened to and having considered all the non-statutory mitigating circumstances, presented by the Defendant's attorney, the Court is convinced beyond a reasonable doubt and to a moral certainty and it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances outlined herein above by itself and even when considered independently is sufficient to outweigh the mitigating circumstances beyond a reasonable doubt and to a moral certainty to justify fixing the punishment at death. Therefore, it is the judgment of this Court that the death penalty as fixed by the jury should be and is hereby accepted.
 "It is therefore considered and adjudged by the Court that Wallace Norrell Thomas is guilty of the capital offense charged in the indictment and specifically of intentionally killing Quenette Shehane during the course of a robbery of said Quenette Shehane, deceased.
 "It is therefore ORDERED, ADJUDGED AND DECREED that you, Wallace Norrell Thomas, suffer death by electrocution at any time before the hour *Page 224 
of sunrise on the 7th day of October, 1982, inside the walls of the William C. Holman Unit of the Prison System at Atmore, Alabama, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution.
 "It is therefore ORDERED, ADJUDGED, AND DECREED by the Court that the Warden of William C. Holman Unit of the Prison system at Atmore, or in the case of his death, disability or absence, his Deputy, or in the event of the death, disability or absence of both the Warden and his Deputy, then the person designated as Administrator by law for such purpose, at any time before the hour of sunrise shall on the 7th day of October, 1982, inside the walls of the William C. Holman Unit of the Prison System at Atmore, in a room arranged for the purpose of electrocuting convicts sentenced by [sic] death by electrocution, cause to pass through the body of the said Wallace Norrell Thomas, a current of electricity of sufficient intensity to cause his death, and the continual application of such current through the body of the said Wallace Norrell Thomas until the said Wallace Norrell Thomas be dead, and may Almighty God have mercy on Your Soul."
After careful review of the entire record we are in complete accord with the Court of Criminal Appeals in its conclusion regarding this matter:
 "Appellant asserts that the trial court improperly considered non-statutory aggravating circumstances in its sentencing hearing. In essence, appellant argues that the findings of the fact by the trial court negating the mitigating circumstance enumerated in § 13-11-7 (4), Code of Alabama 1975, amounts to an impermissible consideration of a non-statutory aggravating circumstance. Appellant's contention is factually without merit.
 "A review of the attached order of the trial court reveals that it carefully considered each aggravating and mitigating circumstance enumerated in §§ 13-11-6, -7. It properly found to exist two aggravating circumstances, that the capital felony was committed while the defendant was engaged in the commission of a robbery, and that the capital felony was especially heinous, atrocious or cruel. § 13-11-6 (4), (8). See generally Kyzer v. State, 399 So.2d 330 (Ala. 1981); Dunkins v. State, 437 So.2d 1349 (Ala.Crim.App. 1983). The trial court found the § 13-11-7 (1) mitigating circumstance to exist. In particular, it made specific findings of fact in order to provide for proper appellate review, § 13-11-4, disproving any existence of the § 13-11-7 (4) mitigating circumstance. We do not find that the trial court included the facts negating § 13-11-7 (4), or relied upon them as a non-statutory aggravating circumstance. See e.g., Whisenhant v. State, [Ms. 1 Div. 333, Nov. 23, 1982] (Ala.Crim.App. 1982). The trial court adhered to the safe practice of following the statute in negating the mitigating circumstances and further, under § 13-11-4, listed specific facts to support the negation of § 13-11-7 (4). This procedure does no injustice to the substantial rights of appellant and does not constitute error."
This clearly demonstrates the care given by the trial court to consideration of aggravating and mitigating circumstances evidenced by specificity in finding facts in support of its conclusions that particular mitigating circumstances did not exist. We here note that the trial court instructed the jury that it would be improper for it to consider non-statutory aggravating circumstances in arriving at a recommended sentence. It is presumed that trial courts follow their own instructions. Harris v. Rivera, 454 U.S. 339, 102 S.Ct. 460,70 L.Ed.2d 530 (1981).
Issues five, six, and seven, as stated by Thomas, may be summarized, as the State did in its brief, as to whether Thomas's death sentence is appropriate and should be affirmed.
The Court of Criminal Appeals, following guidelines established by this court in Beck, found: *Page 225 
 "In accordance with the guidelines of Beck, 396 So.2d 645, 664, we find that appellant's death sentence: (1) was not imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) the evidence fully supported the trial court's finding of the statutory aggravating circumstances listed in its written order; and (3) the sentence was not excessive or disproportionate in relation to the penalty imposed in similar cases, considering both the crime and the defendant."
We agree.
Regarding the first Beck-mandated inquiry, the crime for which Thomas was convicted is undoubtedly a capital offense under § 13-11-2 (a)(2), Code 1975. As to the second mandated inquiry, similar crimes have been and are being punished capitally. Beck v. State, 396 So.2d at 654 n. 5 (Ala. 1980). Two-thirds of death sentences imposed in Alabama are in cases of robbery-murder; see, e.g., Coulter v. State, 438 So.2d 352
(Ala. 1983); Bush v. State, 431 So.2d 563 (Ala. 1983); Womackv. State, 435 So.2d 766 (Ala. 1983).
The only errors in the trial court's written findings about aggravating and mitigating circumstances were favorable to Thomas. That court found and weighed two aggravating circumstances: the § 13-11-6 (4), Code 1975, circumstance that the capital offense involved robbery and the § 13-11-6 (8), Code 1975, circumstance that the capital offense was especially heinous, atrocious and cruel.
Moreover, the § 13-11-6 (2) aggravating circumstance that Thomas had been previously convicted of a felony involving the use or threat of violence to another person, was not, but should have been, considered by the trial court. It was proved that Thomas had three robbery convictions; however, the trial court refused to consider them because convictions were obtained after the capital offense in this case was committed. That was error favorable to Thomas. The trial court also excluded one of the three robbery convictions on the additional ground that the particular conviction was still on appeal. That was also erroneous. The collateral and supplemental effects of a conviction are not suspended pending appeal. See e.g., Eversv. Medical Licensure Commission, 421 So.2d 89 (Ala. 1982); Exparte Alabama Bar, 285 Ala. 191, 230 So.2d 519 (1970); Vibergv. State, 138 Ala. 100, 107, 35 So. 53, 55 (1902); Latikos v.State, 17 Ala. App. 655, 656, 88 So. 47, 48 (1921). In Coulterv. State, 438 So.2d 352, 353 (Ala. 1983), this court held that a violent felony conviction obtained after the capital offense was committed should be considered against the defendant in sentencing even if the crime giving rise to that conviction occurred after commission of the capital offense. In affirming Thomas's sentence, the Court of Criminal Appeals recognized that the trial court should have found and considered the § 13-11-6 (2) aggravating circumstance.
The trial court's erroneous exclusion of the three robbery convictions also led it to improperly find and consider the § 13-11-7 (1) mitigating circumstance of "no significant history of prior criminal activity." Three assault convictions, a conviction on two counts of breaking and entering, and larceny and three robbery convictions certainly amount to a significant history of prior criminal activity.
In spite of the erroneous findings favorable to Thomas, the trial court found the aggravating circumstances "far outweigh[ed]" the mitigating circumstances.
As to the third Beck-mandated inquiry, the death sentence is singularly appropriate for this particular defendant. See, Nealv. State, 372 So.2d 1331 (Ala.Cr.App. 1979) (DeCarlo, J., concurring), id., (Bowen, J., concurring), cert. denied,372 So.2d 1348 (Ala. 1979), in which two judges of the Court of Criminal Appeals criticized a trial judge for not sentencing one of Thomas's co-defendants to death for the same crime. Thomas has been convicted of numerous other crimes, including three robberies. In addition, the circumstances of the crime dictate that he should suffer death as punishment. *Page 226 
In so concluding, the trial court made the following finding:
 "The Court finds the facts to be that the nude body of the victim, Quenette Shehane, was found in a wooded area during an extremely cold period. Her body bore the signs of trauma in that there were numerous abrasions, bruises, scratches and gunshot wounds. It was determined that the victim had been shot with a .22 caliber pistol one time in the chest, three times in the buttocks, and two times in the left elbow. The above mentioned abrasions were found on her chest, abdomen and lower extremities. The victim's clothes did not have bullet holes in them, indicating that she was nude at the time she was shot. The Court finds that the killing of Quenette Shehane was outrageous and extremely wicked, vile and shockingly evil. The Court finds from the evidence that the victim was abused and tortured prior to her death. It is, therefore, the opinion of this Court that the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses."
The trial court specifically found that it was Thomas who murdered Miss Shehane by repeatedly shooting her. That finding is also firmly supported by the evidence. When affirming that finding, the Court of Criminal Appeals stated:
 "The facts lead to the reasonable conclusion that appellant was the triggerman of the instant killing. This can be drawn from the facts that: (1) appellant was president of his fraternity of which Neal [one co-defendant] was a member and Jones [the other co-defendant] had previously been a pledge; (2) appellant's clothing showed no trace of blood or recent struggle when picked up by Lynn. [The fact that appellant unlike his two co-defendants had no blood on him indicates that he shot the victim while she was being held by his two accomplices.] (3) when arrested, he had the murder weapon in his possession; and (4) the victim's television was clearly traced to him. [The conclusion that appellant was the triggerman is corroborated by the confession of one of appellant's co-defendants. See, Neal v. State, 372 So.2d 1331 (Ala.Cr.App. 1979), cert. denied, 372 So.2d 1348 (Ala. 1979). It was not introduced in this case and accordingly not considered by the trial court.]"
Thomas argues that his sentence should be reduced because one of his co-defendants received a life imprisonment without parol sentence and the other a life sentence (after conviction for non-capital murder). We reject that contention for three reasons: The fact that Thomas was the triggerman is itself sufficient to justify the difference in sentences. E.g.,McClesky v. State, 245 Ga. 108, 263 S.E.2d 146, 151, cert.denied, 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980);Clark v. Commonwealth, 220 Va. 201, 257 S.E.2d 784, 792-796
(1979), cert. denied, 444 U.S. 1049, 100 S.Ct. 741,62 L.Ed.2d 736 (1980); State v. Shaw, 273 S.C. 194, 255 S.E.2d 799, 804,cert. denied, 444 U.S. 957, 100 S.Ct. 437, 62 L.Ed.2d 329
(1979). (The co-defendant who was convicted of non-capital murder was thereby acquitted of the capital offense. That itself is sufficient to justify the difference between the sentence given him and that imposed upon Thomas.) Additionally, Thomas makes no showing that either of his co-defendants had a prior record similar to his.
Moreover, even assuming that either or both of Thomas's co-defendants deserved a death sentence, that would not justify reducing Thomas's deserved death sentence. The sentences received by co-defendants must be considered by this court in determining the appropriateness of a death sentence on appeal,Beck v. State, 396 So.2d at 664, but they are not controlling per se. (Appellant's contention that the trial court should have expressly considered the sentences received by appellant's co-defendants is answered in Coulter v. State, 438 So.2d 336
(Ala.Cr.App. 1982), aff'd, 438 So.2d 352 (Ala. 1983). In that case, we affirmed the Court of Criminal *Page 227 
Appeals holding the disproportionality question involving consideration of co-defendant sentences is something to be addressed by the appellate courts instead of at the trial level. Accord, Miller v. Florida, 459 U.S. 1158, 103 S.Ct. 802,74 L.Ed.2d 1005 (1983) (Marshall, J., dissenting from denial of certiorari). Were they, there would be no need for us to make the other inquiries we mandated in Beck. In Gregg v. Georgia,428 U.S. 153, 199, 203, 96 S.Ct. 2909, 2937, 2939,49 L.Ed.2d 859 (1976), the Court held that an isolated decision to afford a capital defendant mercy does not render unconstitutional death sentences imposed on other defendants in similar cases. It is only when sentencing authorities "generally do not impose the death penalty" in a particular type of case that sentence reduction is required. Id., at 206, 96 S.Ct. at 2940. Seegenerally, Bell v. Watkins, 692 F.2d 999, 1005 n. 8 (5th Cir. 1982).
In the final substantive paragraph of its opinion, the Court of Criminal Appeals concluded that:
 "In the instant case, the aggravating circumstances `remarkably and exceedingly outweigh the mitigating circumstances. . . .' Dunkins, supra. We therefore concur in and affirm the findings of the jury and the trial court that death is the appropriate sentence. `Indeed, applying the laws of this state and nation to the particular facts of this case, we do not see how any other penalty is justified.' Id."
We concur in that conclusion.
After careful and thoughtful review of the entire record, we cannot conclude otherwise than to affirm the decision of the Court of Criminal Appeals and the conviction and sentence to death of Wallace Norrell Thomas.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.