Giles was initially convicted and sentenced to death in 1979; however, his conviction and sentence were overturned, and he was granted a new trial pursuant to our holding in Beck v.State, 396 So.2d 645 (Ala. 1980). Giles v. State, 405 So.2d 50
(Ala.Crim.App. 1981). His second trial resulted in a conviction and sentence of death also. The Court of Criminal Appeals affirmed, 554 So.2d 1073, and his petition for writ of certiorari was granted. We affirm the judgment of the Court of Criminal Appeals insofar as it affirmed the conviction, but reverse it insofar as it affirmed the sentence, and remand the cause to the Court of Criminal Appeals with instructions to remand to the trial court for a new sentencing hearing before a jury.
Defense counsel conceded in his opening statement at trial that the evidence would establish that Giles was guilty of murder. Consequently, on appeal, the defendant does not challenge the sufficiency of the evidence establishing his guilt. The defendant takes issue with pretrial rulings on change of venue, recusal, and exclusion of jurors; with prosecutorial comments to the venire; with court instructions to the jury; and with the trial court's decision during the sentencing hearing to send the jury back for further deliberations after the jury foreman informed the court that the jurors were hopelessly deadlocked.
After a careful review of all the questions raised by the defendant, we find that the only issue with merit concerns the court's response to the jury foreman's announcement that the jury was hopelessly deadlocked.
After lengthy instructions on aggravating and mitigating circumstances at the sentencing hearing, the trial court concluded its oral charge to the jury by stating:
 "You are to presume that if you sentence Arthur Giles to life imprisonment without the possibility of parole, he will spend the rest of his life in prison. You are to make no other presumptions.
 "In this proceeding, if your verdict is not unanimous, the defendant will be sentenced to life imprisonment without the possibility of parole.
 "Now, then, ladies and gentlemen, after considering all of the evidence concerning the sentence phase in this case, you will have one of two verdicts. If you find that the State did prove beyond a reasonable doubt the existence of one or more of the three aggravating circumstances that I instructed you on, but that aggravating circumstance or circumstances was outweighed by the mitigating circumstances in this case, then you should also return this form of verdict that I just read to you, life imprisonment without parole.
 "If you unanimously find that the State proved beyond a reasonable doubt the existence of one or more of the three aggravating circumstances that I instructed you on, and if you unanimously find that aggravating circumstance or *Page 1091 
circumstances outweighs the mitigating circumstances in this case, then you should return the form of verdict as follows: We, the Jury, fix the punishment of the Defendant, Arthur Lee Giles, at death.
 "Your verdict must be unanimous. All twelve of you must agree before you can reach any punishment verdict on this case. Any punishment verdict that you reach must be the verdict of each and every one of you."
The jury was then dismissed from the courtroom so that the trial court could entertain objections. Defense counsel's objection to the court's charge on the necessity of unanimity was stated and resolved as follows:
 "MR. CARROLL: And we also object to the Court's charge on whether or not the Jury has to be unanimous in its verdict to impose a sentence of life imprisonment without parole. The Court gave the charge requested by the Defendant, which indicates exactly what you stated the law is, but under Beck versus The State that is if one juror disagrees with the imposition of the death sentence, then a sentence of life without parole must be imposed. The Court gave that charge, but at the end of the charge indicated that the sentence had to be unanimous. We contend that that's an incorrect statement of law.
 "THE COURT: Now, I'm not sure that I understand you, Mr. Carroll.
 "MR. BURTTRAM: I believe he's right. I believe that's the way you ended your charge.
 "MR. CARROLL: You gave our charge, which we contend is a correct version of the law, which says in this proceeding if your verdict is not unanimous, the Defendant will be sentenced to life imprisonment without the possibility of parole.
"THE COURT: What are you objecting to?
 "MR. CARROLL: The fact that . . . the last thing you said in your charge was that any sentence must be unanimous, any sentencing verdict.
"THE COURT: The verdict must be unanimous.
 "MR. CARROLL: It has to be unanimous on the issue of death, but does not have to be —
 "THE COURT: All twelve of you must agree before you can reach any punishment verdict.
 "MR. CARROLL: Right. And we contend that that's not true.
 "THE COURT: It would be true, unless they were not able to agree, then it would be life imprisonment without parole.
 "MR. CARROLL: Right. So, therefore, their sentencing verdict would not have to be unanimous. If they can't agree, then a sentence of life imprisonment without parole is imposed.
 "THE COURT: All right. Bring the Jury back. I will give further instructions. Would you be satisfied if I read your instructions?
"MR. CARROLL: Yes.
(Jury present.)
 "PROSPECTIVE JUROR SUMMERS: Your Honor, would you clarify one statement. Did you say that it has to be a unanimous verdict for death, but if we don't reach a unanimous verdict, it's automatic life without parole.
 "THE COURT: All right. That's exactly what I was going to reinstruct you about. I gave you an instruction in this case that if your verdict is not unanimous — Well, if you are not able to reach a verdict in the case, I'll say it that way, then the Defendant would be sentenced to life imprisonment without parole. To sentence the Defendant to death, then it must be a unanimous verdict of all twelve of this Jury.
 "All right. You may retire. Do you want to consider this case tonight?
(Jury responded yes.)
 "THE COURT: All right. Then you may retire to the jury room to consider the case. You will have out with you the evidence which was introduced by the parties and the forms. We have prepared the forms of verdict here. You will have out the forms of verdict and the evidence presented to you in this case, *Page 1092 
and when you have reached a verdict, you signify that fact and we will be at the pleasure of the Jury. If you want to work tonight or want to come back tomorrow, all you have to do is let us know."
The jury retired at 6:50 p.m. and returned at 9:10 p.m., at which time the following transpired:
 "THE COURT: Ladies and gentlemen of the Jury, at this point have you been able to reach a verdict in this case?
 "THE FOREMAN: Your Honor, we are hopelessly deadlocked. And we were awaiting instructions from you on just what to do.
 "THE COURT: All right. Ladies and gentlemen, we have been here since Tuesday morning in this case, which is now at least four-and-a-half days. You have been deliberating this question for a little better than two hours. I do not feel that two hours with the length of time that it took to try it would be adequate time. I know that all of you are tired, as well as the Court and everybody else that's here. I think that the Clerk has rooms reserved for you, already had them reserved.
 "I think that what we will do, and maybe we will get a fresh start in the morning, is recess you until 9:00 in the morning.
 "Now ladies and gentlemen of the Jury, it is imperative that under the instructions that I have previously given that you do not discuss this case with anyone whatsoever. I'm going to recess you under the same instructions that you have been under at all times.
 "So ladies and gentlemen, I'm going to recess you now until 9:00 in the morning."
The defendant contends that the trial court erred in requiring the deadlocked jury to return the next morning for further deliberations. He argues that the trial court instead should have entered a sentence of life without parole. He also argues that the trial court's actions impermissibly suggested to the jury that the trial court favored a death sentence in the case. We agree with the latter contention.
The defendant was convicted and sentenced for the November 10, 1978, murders of Willene and Carl Nelson pursuant to Alabama's old death penalty statute, Code 1975, § 13-11-1 through § 13-11-8.[1] In Beck v. State, 396 So.2d 645 (Ala. 1980), the court interpreted the statute as requiring a unanimous verdict at a sentencing hearing before the jury can recommend the death sentence. The court further held that "[i]f the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment without parole." Id. at 663.
In this case, the trial court instructed the jury on the effect of a non-unanimous verdict. Although the court's charge was a correct statement of law, taken directly from Beck v.State, 396 So.2d 645, 663 (Ala. 1980), it was not a proper subject of instruction for the jury. This court's explanation in Beck of the procedural and legal effect of a jury's inability to reach a unanimous verdict was directed to the trial court alone. As the Court of Criminal Appeals observed inWhisenhant v. State, 482 So.2d 1225, 1236 (Ala.Cr.App. 1982):
 "The likely and undesirable effect of [this] instruction [was to] give 'an open invitation to the jury to avoid its responsibility and to disagree.' Justus v. Com., 220 Va. 971, 266 S.E.2d 87 (1980); see also State v. Johnson, 298 N.C. 355, 259 S.E.2d 752 (1979); State v. Hutchins, 303 N.C. 321, 279 S.E.2d 788 (1981)."
The jury in this case deliberated approximately two-and-one-half hours after being instructed on the effect of a non-unanimous verdict. The jurors then returned to the courtroom and told the judge that they were "hopelessly deadlocked". Conceivably, the jurors were confused by the trial court's ordering them to deliberate further. After all, this same judge had recently charged that if they were unable to agree unanimously, a sentence of life imprisonment without parole would be imposed as a *Page 1093 
matter of law. We can only speculate on what actually entered these jurors' minds; however, under the circumstances of this case, at least one juror may have changed his vote from life without parole to death because of a feeling that the judge favored the death penalty in this case.
Under Alabama law, "a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used."Showers v. State, 407 So.2d 169, 171 (Ala. 1981). In a capital case, however, under the old Alabama death penalty statute, which contemplated a unanimous jury verdict, but in its absence, provided for the imposition of a sentence of life imprisonment without parole, the mere fact that the court instructs the jury to deliberate further, after what the jury characterizes as a "deadlock" has occurred, impermissibly suggests which way the verdict should be returned.[2]
In a similar case from Delaware, Rush v. State, 491 A.2d 439,453 (Del. 1985), the court held:
 "It thus appears that, even in an ordinary jury case where unanimity is essential to the result, it is a delicate matter for the court to instruct a deadlocked jury to deliberate further. In a § 4209 death penalty hearing, in which lack of unanimity per se results in a sentence of life imprisonment, such instruction is fatal as being overly coercive.
". . . .
 "We may not overlook the reasonable probability of an unduly persuasive effect, intended or not, of the Trial Court's instructions upon the jurors. We must assume that some jurors in this case, according due regard and respect to the Trial Judge's views expressed or implied, received a message from the Bench that they should return to their deliberations and strive further toward that unanimity which . . . could result only in a recommendation of the death sentence. The mere possibility of such a message is impermissible."
Similarly, in Florida, under a statute requiring a majority verdict in order to recommend death and, in the case of a deadlocked jury, requiring the automatic imposition of a life-without-parole sentence, the court held that it was error for the trial court to send the jury back for further deliberations after they asked for instructions on how to resolve a 6-6 tie:
 "At that point [when the jury asked for instructions] the trial judge should have advised the jury that it was not necessary to have a majority reach a sentencing recommendation because, if seven jurors do not vote to recommend death, then the recommendation is life imprisonment. There was no reason to give the "Allen charge"[3] during the penalty phase of the trial. We therefore vacate the death sentence and hold that defendant is entitled to a new sentencing proceeding before a jury."
Rose v. State, 425 So.2d 521 (Fla.), cert. denied,461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983).
Accordingly, we affirm the Court of Criminal Appeals' judgment insofar as it affirmed the murder conviction, but reverse insofar as it affirmed the death sentence, and we remand the cause to that court with instructions to remand it to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, JONES, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
[1] The statute was repealed by Acts 1981, No. 81-178, § 20, effective July 1, 1981; however, conduct occurring before 12:01 a.m. on July 1, 1981, continues to be governed by pre-existing law.
[2] For a case reaffirming the significance of the jury's role in the sentencing process, see Williams v. State [MS. 86-518, Sept. 18, 1987] 556 So.2d 744 (Ala. 1987).
[3] A jury charge recognized in Allen v. United States,164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), instructing the jury on their duty to resolve their differences, come to a conclusion, and return a verdict. *Page 1094