**Wallace Norrell THOMAS,
Petitioner–Appellant,**

v.

**Charlie JONES, Warden, and the Attorney General of the State of Alabama,
Respondents–Appellees.**

**No. 89–7213.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 21, 1989.

Rehearing Denied Feb. 13, 1990.

David Skeen, Port Townsend, Wash., for petitioner-appellant.

Ed Carnes, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before TJOFLAT, Chief Judge, FAY and VANCE *, Circuit Judges.

---

* This opinion was concurred in by Honorable Robert S. Vance prior to his death on December 16, 1989, and was delivered to the clerk for filing before the close of business on December 15, 1989.

FAY, Circuit Judge:

Defendant Wallace Norrell Thomas appeals the district court's dismissal with prejudice of his petition for a writ of habeas corpus. Defendant contends that the district court erred in finding that defendant's constitutional rights were not violated at the sentencing hearing when the state trial judge, knowing the jury had not reached a final decision, sequestered the jury for the evening with instructions to continue deliberations in the morning. Defendant argues that the trial judge should have accepted the jury's lack of unanimity and sentenced the defendant to life imprisonment without parole rather than death. Defendant further asserts that the district court erred in finding that defendant was not denied effective assistance of counsel. Defendant argues that because he was not charged with rape, his counsel should have objected when the state introduced evidence during trial and made remarks during closing arguments that the victim had been sexually abused. Finally defendant requests reversal of the district court's ruling that defendant was not denied due process when the state trial judge declined to order examinations to determine defendant's sanity at the time of the offense. We find all of defendant's contentions meritless. Accordingly, we AFFIRM the district court's dismissal of defendant's petition for writ of habeas corpus.

## I. BACKGROUND

On November 3, 1977, defendant Thomas was convicted of intentionally killing Quenette Shehane during the course of a robbery, and he was subsequently sentenced to death. However, defendant's conviction was reversed and remanded for a new trial on the authority of *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and *Beck v. State*, 396 So.2d 645 (Ala.1980). *Thomas v. State*, 400 So.2d 435 (Ala.Crim.App.), *cert. denied*, 400 So.2d 435 (Ala.1981). In May, 1982, Thomas was retried for murdering Quenette Shehane. On

May 19, 1982, the jury returned a verdict convicting Thomas of killing Quenette Shehane during the course of a robbery, and on May 20, 1982, the jury tendered a verdict recommending a death sentence. Thomas appealed, and the conviction and sentence were affirmed by the Alabama Court of Criminal Appeals, *Thomas v. State*, 460 So.2d 207 (Ala.Crim.App.1983), and the Alabama Supreme Court, *Ex parte Thomas*, 460 So.2d 216 (Ala.1984). Thomas was prevented from obtaining a writ of certiorari from the United States Supreme Court because of his failure to file timely a petition.

Thomas next filed a petition for writ of error coram nobis in Mobile County Circuit Court. After an evidentiary hearing on July 22, 1985, the petition for a writ of error coram nobis was denied. Thomas appealed the denial of his petition for writ of error coram nobis, and the Court of Criminal Appeals of Alabama affirmed the decision of the Mobile County Circuit Court. *Thomas v. State*, 511 So.2d 248 (Ala.Crim.App.), *cert. denied*, 511 So.2d 248 (Ala.1987).

Having exhausted his state court remedies, Thomas turned to the federal courts. He filed a petition for a writ of habeas corpus, an amended petition for a writ of habeas corpus, and a second amended petition for a writ of habeas corpus in the United States District Court for the Southern District of Alabama, all of which were dismissed on December 29, 1988. Thomas appeals to this court to overturn the district court's ruling.

## II. DISCUSSION

### A. The Trial Court's Instruction to Continue Deliberations

■ The record shows that at about 2:00 p.m. on May 19, 1982, after a short discussion between the trial judge and counsel, lawyers for the state and for defendant Thomas began their opening arguments regarding sentencing. At the conclusion of defense counsel's opening argument, there being no evidence beyond what was presented at trial, the prosecutor argued aggravating circumstances and counsel for Thomas argued mitigating circumstances. The trial judge then provided the jury with sentencing instructions. After they were charged, the jury began deliberations. The deliberations lasted between one hour fifty minutes and two hours, after which the following colloquy occurred:

> THE COURT: Ms. Cunningham, does the jury have a report they would like to make to me? Do not tell me how you are split if there is a numerical division in your number.

> MS. CUNNINGHAM: Yes, it is.

> THE COURT: Okay. We have spent the better part of two days trying this case. Witnesses have been brought in and told everything there is to be told about this case. The lawyers have done a fine job in presenting both sides of the case to you. Under the circumstances I'm going to recess you until 8:30 in the morning. Let's make it 9:00 in the morning. I have a docket to call. And let y'all come back in fresh and try your deliberation again. I feel two hours is too short a time deliberation to call a hung jury. ....
>
> Is there anything further for the state?

> MR. BARBER: No, Sir.

> THE COURT: For the defendant?

> MR. HULTQUIST: No, Sir.

(Folder No. 5, Vol. 4 at 602–03). The trial judge then ordered the jury to remain sequestered and discharged them for the evening.

The following morning, defendant's counsel argued that the jury should not be allowed to continue deliberating because of the Alabama Supreme Court's decision in *Beck v. State*, 396 So.2d 645 (Ala.1980). The trial judge denied defendant's request to prevent further deliberations and charged the jury as follows:

> THE COURT: Ladies and gentlemen of the jury, I hope y'all had a pleasant evening and are rested. When I told you I wanted you to deliberate further, I am not trying to force you to get a verdict. There's one thing I feel like that y'all might not have understood

from my previous charge to you and I want to make this clear to you.

If the jury cannot agree on a unanimous sentence of death as the punishment, the alternative form of, we, the jury, find the punishment life imprisonment without parole would be what you would return. Did y'all understand that previously?

JUROR: No, sir.

THE COURT: So, you have two possible forms you may return. One, is the death verdict form I have given you. If you cannot agree on that unanimously, then your verdict would be the life imprisonment without parole.

Do you have any questions or anything further I might be able to assist you in, in your deliberations at this time?

(Indicating no.)

THE COURT: Thank You.

(Jury out for further deliberation.)

(Folder No. 5, Vol. 4 at 602–03).

Defendant argues that the trial court violated his constitutional rights in that it should have accepted the jury's May 19th statement that it had not yet reached a decision as a recommendation that Thomas be sentenced to life imprisonment without parole pursuant to *Beck v. State*, 396 So.2d 645 (Ala.1980). Defendant further argues that the trial court coerced the jury to return a sentence of death when it instructed them to continue deliberations. We find both contentions meritless.

After careful review of the record we cannot conclude that the state trial judge committed constitutional error in requiring the jury to continue deliberations after learning of their indecision at the close of the afternoon session. Although there is no specific statement in the record as to the time when the judge called the jury out of deliberations on May 19, 1982, we are of the impression that it was late in the day. The afternoon session began at approximately 2:00 p.m. and included opening statements regarding sentencing, arguments concerning aggravating and mitigating circumstances, sentencing instructions to the jury, and approximately two hours of jury deliberation. Thus, it appears that the court was simply recessing for the evening when it called the jurors to determine whether a verdict had been reached.

Nonetheless defendant argues that the response from the jury that they had not yet reached an unanimous verdict precluded the judge from imposing the death sentence. We disagree. There is no indication in the record that the jurors were complaining to the court that they were "hopelessly deadlocked." *Cf. Ex parte Giles*, 554 So.2d 1089, 1090 (Ala.1987) (per curiam) (Alabama Supreme Court reversed death sentence where judge mandated continued deliberations after jury stated it was hopelessly deadlocked). To the contrary, there is no indication in the record that the jury had terminated its deliberations when the trial judge questioned Ms. Cunningham. We hypothesize that the judge inquired as to the jury's position in order to determine whether it would be necessary to reconvene the following day. We do not believe that Thomas' right to due process was violated by the trial judge's actions.

■ Moreover, we find that the state trial judge was not coercive in mandating further deliberations and reinstructing the jury on May 20, 1982. We believe *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), is germane. In *Lowenfield*, the jury, after being charged, began deliberations. The evening drew to a close and they reconvened the next day to continue deliberations. During the afternoon, the jury sent a note to the judge stating that they were unable to reach a decision at that time and requesting advice from the court again as to their responsibilities. The court responded by providing each juror with a note asking if it would be helpful to continue deliberations. Eight of the twelve jurors thought further deliberations would be helpful. When the court called the jurors into the courtroom to advise them of their responsibilities, the jury again gave the court a note which stated that some of the jurors misunderstood the previous question. The judge asked whether further deliberations would help them reach a verdict, and eleven responded af-

firmatively. The court then instructed the jury again, and in thirty minutes, the jury returned a verdict sentencing defendant to death. The Supreme Court held that the trial judge did not impermissibly coerce the jury to return a death sentence when it polled the jury twice and reinstructed it to continue deliberations.

Under the authority of *Lowenfield*, we find the trial judge's colloquy with the jury in the present case to be even more uncoercive. Unlike the trial judge in *Lowenfield* who ordered continued deliberations after the jury, of its own volition, informed the court of its failure to reach a verdict, the judge in the instant case interrupted the jurors before they had ceased deliberating. He did not order continued deliberations in response to the jury's claim of indecisiveness, but rather, he permitted the jury to reconvene to resume discussions which they had not yet completed. We find this situation to be inherently less coercive than the situation with which the *Lowenfield* jurors were faced. Hence, if the Supreme Court found no error in the actions of the *Lowenfield* judge, then we certainly find that the judge in this case committed no error in allowing the jury to continue deliberations.

Further, the trial judge in the instant case explicitly stated to the reconvened jury that he was not trying to force them to reach a verdict. Rather, he explained that if they could not agree unanimously on a sentence of death, they would be required to return a verdict of life imprisonment without parole. Nothing in what the judge told the jury leads us to believe that the jury was coerced into recommending a death sentence. To the contrary, we believe the judge painstakingly attempted to avoid influencing the jury to return a verdict of death.

### B. The Prosecutor's Comments Regarding Rape and Counsel's Failure to Object

■ Before Thomas' trial, his counsel submitted a motion in limine to preclude introduction of any evidence showing that Quenette Shehane had been raped, since Thomas was not charged with rape. The trial court denied defendant's motion. At trial, the state introduced evidence that on the night Quenette Shehane was killed, Thomas had stated that he was going out to pick up girls. Further, the state introduced evidence of semen stains found on the upholstery of the victim's car and pubic hair found on the victim's coat. Also, during closing argument in both the guilt and sentencing stages of trial, the prosecutor suggested that Quenette Shehane had been sexually abused before she was killed. Trial counsel for Thomas did not object to the state's references to rape.

Defendant contends that his trial counsel gave him ineffective assistance for failing to object to the prosecutor's introduction of evidence that a rape had occurred and allusion to rape in closing arguments. We disagree. In a habeas corpus proceeding our review of evidentiary rulings of the trial court is limited. See, *e.g., High v. Kemp,* 819 F.2d 988, 996 (11th Cir.1987) (contention that statement of other murders was an improper attempt to use other crimes as evidence of guilt was a question of Georgia evidentiary rules and not a basis for relief in habeas corpus proceeding), *cert. denied,* —— U.S. ——, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989); *Smith v. Wainwright,* 741 F.2d 1248, 1258 (11th Cir.1984) (admission of evidence of another murder not unconstitutional, although its admissibility is "close and difficult" question under state law), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985); *Hall v. Wainwright,* 733 F.2d 766, 770 (11th Cir.1984) (per curiam) (citing *Burgett v. Texas,* 389 U.S. 109, 113–14, 88 S.Ct. 258, 260–61, 19 L.Ed.2d 319 (1967)) (federal courts' authority to review state evidentiary rulings in a habeas corpus action is limited; not fundamentally unfair to admit evidence of other murder), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985). Consequently, we will accord deference to the state trial judge's order denying Thomas' motion to exclude the evidence of sexual abuse, and to the trial court's holding in the coram nobis proceeding that the pubic hair and semen stain were admissible as part of the crime scene. (Folder No. 4, Vol. 1 at 75–76); *see also Morrow v. State,* 52 Ala.App. 145, 290 So.2d 209 (Ala.Crim.App.1973) (evidence

which is part of res gestae admissible), cert. denied, 292 Ala. 743, 290 So.2d 213 (Ala.), cert. denied, 419 U.S. 853, 95 S.Ct. 97, 42 L.Ed.2d 85 (1974); Lackey v. State, 41 Ala.App. 46, 123 So.2d 186 (Ala.Crim. App.) (articles found at the scene of a crime which show the manner in which it was committed admissible), cert. denied, 271 Ala. 699, 123 So.2d 191 (Ala.1960). Furthermore, after reviewing Alabama law, we believe that the evidence and statements regarding abuse of the victim were also admissible to show Thomas' motive and intent to kill Quenette Shehane. See Garner v. State, 269 Ala. 531, 114 So.2d 385 (Ala.1959); Harris v. State, 489 So.2d 688 (Ala.Crim.App.), cert. denied, 489 So.2d 688 (Ala.1986); Akers v. State, 399 So.2d 929, 931 (Ala.Crim.App.1981); Thigpen v. State, 50 Ala.App. 176, 277 So.2d 922 (Ala.Crim. App.1973). It follows that counsel for defendant did not err in failing to object to such admissable evidence. Consequently, defendant was not denied effective assistance, since counsel's performance did not fall below an objective standard of reasonableness when counsel did not object to the evidence of sexual abuse of Quenette Shehane. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## C. Failure to Appoint an Independent Psychiatric Examiner

■ Finally, defendant claims that the district court erred when it failed to find a constitutional violation in the state trial court's refusal to appoint an independent psychiatrist to determine Thomas' sanity at the time he committed the offense. Defendant emphasizes the fact that Dr. Herbert Eber, in May, 1977, prior to Thomas' first trial, wrote a report which stated that defendant was insane during the commission of the offense and at the time of trial. Defendant argues that the state trial judge should have granted defendant's motion for an independent examination because of the existence of Dr. Eber's report diagnosing Thomas as insane and incompetent.

Defendant relies on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to support his argument that the trial judge committed a constitutional violation by failing to appoint an independent psychiatrist. We find defendant's reliance misplaced. In Ake, the defendant had been so unstable prior to his trial that the trial court sua sponte ordered him to be examined by a psychiatrist. The psychiatrist recommended that Ake be sent to an institution to determine if he was competent to stand trial. Psychiatrists at the institution found Ake incompetent, but rehabilitated him to the point of competency after six weeks. In a pretrial conference, Ake's attorney informed the court that Ake would use the insanity defense, but the court denied appointment of a psychiatrist. The Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83, 105 S.Ct. at 1096.

This case differs significantly from Ake. Whereas the court in Ake was fully apprised of Ake's mental instability from the outset, the court in the instant case was totally unaware of mental problems Thomas might have been encountering. Nowhere does the record show that Dr. Eber's report[1], which found Thomas incompetent and insane, was presented to the trial court. Further, counsel for Thomas never complained about difficulties communicating or cooperating with Thomas. Additionally, the trial court engaged in a discussion with Thomas which indicated that Thomas was indeed competent.[2] Finally, the trial judge had two other reports before it, one from a social worker stating that Dr. Blankenship examined Thomas at the Jefferson County jail and found him compe-

---

1. We note that the record manifests that Dr. Eber's report lacks reliability. Unlike the other reports which diagnose Thomas as competent, Dr. Eber's report was based not on a personal interview with Thomas, but rather information which a layman gathered from Thomas.

2. Realizing the seriousness of having been charged with a capital crime, Thomas argued to

tent, and another from Searcy Hospital averring that examinations revealed defendant's competence. The trial judge simply had nothing before him that indicated Thomas could be insane. Consequently, as we are to evaluate the actions of the trial judge based on the evidence presented to him, we conclude that defendant failed to demonstrate a substantial basis for the insanity defense. *See e.g. Messer v. Kemp*, 831 F.2d 946 (11th Cir.1987) (en banc) (defendant receives fair trial if information before trial judge does not demonstrate a substantial basis for the insanity defense), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 902 (1988). Consequently, we cannot conclude that the state trial judge violated Thomas' constitutional rights by denying his motion to appoint an independent psychiatric examiner.

## III. CONCLUSION

Based on the foregoing, we do not believe that the district court erred in denying defendant's claims for relief. In particular, we find that the state trial judge did not violate Thomas' constitutional rights when he requested further deliberations after recessing for the evening. Nor do we find that Thomas received ineffective assistance because his counsel failed to object to references to abuses of the victim's body before the murder. Finally we reject defendant's claim that he was denied due process when the state trial court refused to appoint an independent psychiatric examiner. Accordingly, we AFFIRM the district court's decision.

TJOFLAT, Chief Judge, concurring:

I concur in the opinion of the court. I write separately because I would take a different approach to petitioner's ineffective assistance of counsel claim.

Petitioner Thomas was charged with robbing and murdering, but not with raping, Quenette Shehane. Prior to trial, Thomas' trial counsel moved in limine to exclude any evidence tending to show that Shehane had been raped. The trial court denied the motion. At trial, the State introduced evidence tending to show that Shehane had been raped, and, in closing argument, the prosecutor suggested that Shehane had been sexually abused before she was killed. In his federal habeas petition, Thomas claimed that his trial counsel rendered ineffective assistance, in violation of Thomas' sixth and fourteenth amendment rights to counsel, by failing to object on either occasion.

The opinion of the court approaches Thomas' ineffective assistance of counsel claim obliquely, detouring unnecessarily through federal habeas cases in which federal courts have deferred to state trial court evidentiary rulings, provided those rulings did not deprive the petitioner of due process.[1] It eventually concludes that evidence of rape was admissible even over objection and that Thomas' counsel did not, therefore, perform defectively by failing to object. I would approach the ineffective assistance of counsel claim more directly.

When analyzing an ineffective assistance of counsel claim, we begin with the familiar two-part *Strickland* inquiry, *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984): was counsel's performance deficient, and, if so, did the deficient performance prejudice the defendant? The standard for measuring deficient performance is an objective one: "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. Furthermore, a reviewing court's scrutiny of counsel's performance should be highly deferential. *Id.* at 689–90, 104

the court that he needed more than one suit during his trial. He was concerned that wearing only one suit during the entire trial would negatively impress the jurors. Clearly, a conversation such as this indicates that Thomas was aware of and understood the proceedings against him.

**1.** In his habeas petition to the district court, Thomas claimed also that the trial court's admission of evidence of a sexual attack and the prosecutor's references to sexual abuse during

closing argument denied him the due process of law. The district court held that these claims were procedurally defaulted, and, on appeal, Thomas does not challenge that holding. Thomas' ineffective assistance of counsel claim is based on the sixth amendment right to counsel, made applicable to the states through the due process clause of the fourteenth amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

S.Ct. at 2065–66 (there is "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; defendant must overcome presumption that challenged action "might be considered sound trial strategy").

Thomas' trial counsel attempted, in his unsuccessful pretrial motion, to prevent the State from bringing potentially prejudicial evidence of rape to the jury's attention. By the time of trial, however, he had adopted a different strategy, as he explained at the coram nobis hearing in the state court. He based petitioner's defense at trial on the theory that petitioner was not present when Shehane was killed. Counsel regarded the State's evidence of a dried semen stain found on the front seat of Shehane's car as relevant and almost certainly admissible to show the circumstances of the crime.[2] He feared that objecting to the state's introduction of the semen stain into evidence would only draw attention to the matter and would suggest that the defense "had something to hide." Therefore, rather than objecting to its introduction, he chose to discredit the evidence by establishing, on cross-examination of the State's forensic expert, that no tests had been performed that indicated any connection between the stain and petitioner or even that the stain was fresh at the time of the crime.

For similar reasons, counsel did not object to the prosecutor's allusions to sexual abuse during closing argument. Counsel believed that the allegedly unwarranted comments were no more than permissible inferences from the evidence that had been properly introduced. Still basing his defense on the theory that petitioner was elsewhere at the time of the crime, counsel decided not to risk creating the appearance that petitioner had anything to fear from the suggestion that Shehane had been sexually abused before she was killed.

This is surely the kind of tactical decision that *Strickland* cautions us not to second-guess. This court itself has stated that

"[t]he sixth amendment right to effective assistance of counsel does not require counsel to raise every objection without regard to its merits." *Palmes v. Wainwright,* 725 F.2d 1511, 1523 (11th Cir.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Counsel had a reasonable expectation that the evidence tending to show rape would have been admitted even over his objection; he made a reasonable decision to minimize the impact of the evidence and to discredit it by showing, on cross-examination, that the State had established no connection between the evidence and his client.

Accordingly, I agree with the court that counsel's performance, in failing to object either to the introduction of evidence tending to show rape or to the prosecutor's suggestion that the victim had been sexually abused, did not fall below an objective standard of reasonableness.

---

**2.** The opinion of this court, showing that evidence of sexual abuse at the time of the killing was admissible under Alabama law, *ante* at 1505, confirms the reasonableness of counsel's assessment. The state trial court's denial of the motion in limine gave counsel additional reason to believe that an objection at trial to the introduction of the evidence would not meet with success.