**Wallace Norrell THOMAS, Petitioner,**

v.

**Charlie JONES, Warden, Holman State Prison, Respondent.**

**Civ. A. No. 90–0517–AH–C.**

United States District Court,
S.D. Alabama, S.D.

July 10, 1990.

599

Bryan Stevenson, Ruth Friedman, Montgomery, Ala., for petitioner.

Don Siegelman, Ed Carnes, John Gibbs, Kenneth S. Nunnelly, Sandra J. Stewart, Office of the Atty. Gen., Montgomery, Ala., for respondent.

## ORDER

HOWARD, Chief Judge.

On July 9, 1990 this cause came before the Court for a hearing on the merits of Wallace Norrell Thomas' second petition for writ of habeas corpus, filed in this Court on July 5, 1990, and on Thomas' motion for a stay of his execution, scheduled for July 13, 1990. At the close of the hearing, the Court orally dismissed the petition, and denied the motion for a stay of execution. Thomas thereupon made an oral motion for a certificate of probable cause to appeal, which the Court denied. The Court now enters this written opinion in accordance with its oral ruling.

## PROCEDURAL BACKGROUND

Thomas was convicted on November 3, 1977, for violation of Section 13–11–2(a)(2), Code of Alabama (1975), the capital offense of robbery where the victim is intentionally killed. He was sentenced to death on March 13, 1978. On March 31, 1981, the Alabama Court of Criminal Appeals reversed Thomas' conviction on the authority of *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) and remanded the case for a new trial.

In May 1982, Thomas was tried for the second time, was found guilty, and was sentenced to death. On October 3, 1983, the conviction and sentence were affirmed by the Alabama Court of Criminal Appeals. *Thomas v. State,* 460 So.2d 207 (Ala.Cr. App.1983). The Alabama Supreme Court affirmed the conviction and sentence, *Ex Parte Thomas,* 460 So.2d 216 (Ala.1984), and denied Thomas' petition for rehearing on November 9, 1984. Thomas' petition for writ of certiorari and stay of execution to the United States Supreme Court was denied certiorari as untimely. Thomas thereafter filed a petition for a writ of error coram nobis in the Circuit Court of Mobile County on May 23, 1985, which was denied. The Alabama Court of Criminal Appeals affirmed on February 10, 1987. *Thomas v. State,* 511 So.2d 248 (Ala.Cr.App.1987), *cert. denied,* No. 86–823 (Ala.1987). Thom-

as' application for rehearing was denied on March 10, 1987, and his petition for writ of certiorari was denied by the Alabama Supreme Court on June 26, 1987.

The first federal habeas corpus petition was filed in the United States District Court for the Southern District of Alabama, Southern Division, on September 11, 1987, and was dismissed on December 29, 1988. The Eleventh Circuit affirmed the dismissal on December 21, 1989, *Thomas v. Jones*, 891 F.2d 1500 (11th Cir.1989), and denied his rehearing petition on February 13, 1990. The United States Supreme Court denied certiorari on May 21, 1990.

Execution is set for July 13, 1990.

The instant petition, filed on July 5, 1990, argued two grounds for issuance of the writ, and for a stay of sentence. At the hearing, the Court heard argument from counsel for both sides, and heard testimony regarding Alabama's electric chair.

## SENTENCING PHASE INSTRUCTIONS

Thomas argued that "the trial court's inadequate and unconstitutional instruction to the sentencing jury violated petitioner's rights under the Eighth and Fourteenth Amendments." Thomas contended that "the jurors who sentenced Thomas to die were improperly led to believe that before they could consider any circumstances in mitigation of punishment, all twelve had to agree on the existence of a single circumstance,"[1] in violation of two recent Supreme Court decisions, *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina*, — U.S. —, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

### *Non-retroactivity.*

■ The State argued that *McKoy* and *Mills* established a new rule of law for retroactivity purposes which, under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), cannot be applied retroactively in this collateral proceeding. Thomas argued that these decisions were

merely extensions of the principles announced in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and its progeny.

■ Under *Mills* and *McKoy*, it is error for the trial judge to instruct the jury that they must unanimously find the existence of a mitigating factor. Further, it is error for the trial judge to give an instruction ambiguous enough to be interpreted that way.

*Teague v. Lane* held that federal courts will not apply new rules of law retroactively in collateral criminal proceedings, and that federal courts will consequently not announce new constitutional principles in collateral review cases. *See Teague v. Lane*, 489 U.S. at —, 109 S.Ct. at 1073–1078, 103 L.Ed.2d at 354–361 (1989): *See also Boyde v. California*, — U.S. —, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Under *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final. *Id.* 109 S.Ct. at 1070 (citations omitted).

■ There are two exceptions to the *Teague* rule against retroactive application of new law in collateral proceedings. First, a new rule is applied retroactively if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." 109 S.Ct. at 1075 (citations omitted). Second, a new rule is applied retroactively if it requires the observance of "those procedures that . . . are implicit in the concept of ordered liberty." *Id.* (citations omitted).

After consideration of the relevant decisions, after hearing the arguments of counsel, and after due and careful consideration, the Court found that *Mills* and *McKoy*

---

1. Under Alabama law, the sentencing phase jury merely makes a non-binding recommendation.

The trial judge sentences the defendant.

announced a new rule of law.[2] The Court further found that this "new" rule was not within either of the two exceptions enunciated in *Teague*, and accordingly, Thomas was not entitled to its retroactive application in this habeas corpus action. Accordingly, the Court could not consider the merits of this claim, and Thomas petition was due to be denied on this ground.

## CRUEL AND UNUSUAL PUNISHMENT

Thomas argued that "the State of Alabama's use of an antiquated electric chair, improperly trained correctional staff with no expertise in electrical execution and execution equipment which results in excessive mutilation of the body and torturous death constitutes cruel and unusual punishment in violation of the Eighth Amendment warranting a stay of execution." Thomas contended that the history of executions in Alabama in the post-*Furman* era show excessive mutilation and burning of the body, that Alabama corrections officers are not competent to manage executions, and that these conditions combine to cause unconstitutionality. Thomas requested that his execution be stayed until Alabama's new electric chair is installed.[3]

### *Abuse of the writ*

■ Preliminarily, the State argued that Thomas' failure to raise this issue in his first habeas petition constituted an abuse of the writ, and that consideration of this claim was therefore precluded under Habeas Rule 9(b). Under the habeas rules, and under *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), federal courts must reach the merits of successive claims unless the claims were deliberately withheld or abandoned, or unless the defendant exhibited inexcusable neglect in failing to assert the claim earlier. A habeas petition may be dismissed if its purpose is to "vex, harass or delay." However, in order to find an abuse of the writ for failure to raise a claim in state court,

the federal court must find an intentional waiver or abandonment of state court claims, under circumstances which justify withholding federal relief. *Potts v. Zant,* 638 F.2d 727, 743 (5th Cir. Unit B, February 17, 1981): *See also Booker v. Wainwright,* 764 F.2d 1371 (11th Cir.1985). When the State raises abuse of the writ, the burden is on the petitioner to show by a preponderance of the evidence that there is no abuse of the writ.

■ Thomas argued that although the legal basis for the claim existed at the time of his original habeas petition in this Court, the factual basis for this claim did not exist until Dunkins' execution in July of 1989. At the hearing, Thomas' argued that study of the executions in Alabama in the post *Furman* era shows that each executed inmate has been burned, that the burning has been comparatively more extensive in the more recent executions, that the execution of Horace Dunkins, Jr., on July 14, 1989 violated the Eighth Amendment because Dunkins was physically and psychologically tortured, that Thomas will be similarly tortured, and that the State of Alabama has neither the equipment nor the personnel to competently carry out a humane execution.

After hearing the argument of counsel the Court found that this claim was not available to Thomas at the time of his initial petition, because a significant portion of the factual basis for this claim did not exist at that time. Further, the Court found that Thomas did not deliberately withhold this claim, and that his assertion of it in this petition was not an abuse of the writ.

### *Non-retroactivity*

■ The State argued that *Ritter v. Smith,* 568 F.Supp. 1499, 1526 (S.D.Ala. 1983), *aff'd in relevant part rev'd in part on other grounds,* 726 F.2d 1505, 1519 (11th Cir.1984), *cert. denied* 469 U.S. 869,

---

**2.** The Court notes that in *McKoy,* Justices Kennedy (concurrence), Scalia, Rehnquist, and O'Connor (Dissent) do not agree that the holdings in *McKoy* and *Mills* emanate from *Lockett* and its progeny.

**3.** The State estimates that the new chair will be delivered and installed within two or three months. (Affidavit of Morris Thigpen).

105 S.Ct. 218, 83 L.Ed.2d 148 (1984) binds this Court to the conclusion that electrocution in Alabama's electric chair does not violate the Eighth Amendment, and argued further that any contrary finding would require a new rule of law, which, under *Teague v. Lane*,[4] could not be applied retroactively on Thomas' behalf in this collateral proceeding.

The Court did not agree that a new rule of law was necessary for Thomas to prevail on this issue. Every case the Court reviewed dealing with electrocution acknowledged that painful electrocution, or excessive burning and mutilation might violate the Eighth Amendment. *See In re Kemmler*, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); In *State of Louisiana v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947); *Ritter v. Smith*, 568 F.Supp. 1499, 1526 (S.D.Ala.1983), *aff'd in relevant part rev'd in part on other grounds*, 726 F.2d 1505, 1519 (11th Cir. 1984), *cert. denied* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). Although *Ritter*[5] did hold that execution in Alabama's electric chair was not cruel and unusual punishment, and specifically that John Lewis Evans' execution did not violate the Eighth Amendment, the decision in *Ritter* was tied to the facts of Evans' execution. As the Court found that the legal principles governing this claim were not new, the Court found that no "new" rule of law would be required to consider this claim, and accordingly such claim was not barred by the nonretroactivity principles of *Teague v. Lane*.

### State Collateral Procedural Default

■ Under Alabama law, the failure to raise in an initial coram nobis petition a ground that was then known or should have been known to the petitioner constitutes a procedural default, *McLeod v. State*, 415 So.2d 1232, 1233 (Ala.Cr.App. 1982), and unless the petitioner can state "cogent and compelling reasons why all the grounds relied upon were not included in the first petition," Alabama courts will not

entertain a second petition, *Ex parte Cox*, 451 So.2d 235, 238–39 (Ala.1984) (quoting *Waldon v. State*, 284 Ala. 608, 609, 227 So.2d 122, 123 (1969)). The Alabama cases enforcing this rule are legion.

In a habeas corpus proceeding, a federal court will not entertain a claim which is procedurally barred in the State court system unless the petitioner can show cause for the default and prejudice accruing as a result. *Wainwright v. Sykes*, 433 U.S. 72, 89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977); *Oliver v. Wainwright*, 795 F.2d 1524, 1528 (11th Cir.1986), *cert. denied*, 480 U.S. 921, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987); *Francis v. Spraggins*, 720 F.2d 1190, 1191–92 & 1192 n. 3 (11th Cir.1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985); *Ford v. Strickland*, 696 F.2d 804, 816 (11th Cir.) (en banc), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Presnell v. Kemp*, 835 F.2d 1567 (11th Cir.1988).

■ Thomas did not raise this issue in his coram nobis petition. At the hearing on July 9, 1990, Thomas argued that the factual basis underlying this claim did not exist at the time that his state coram nobis petition was filed. For the reasons stated in the preceding section, the Court accepted Thomas' argument, and thus found that this claim was not procedurally barred.

### Evidentiary hearing

■ In a habeas corpus proceeding, the petitioner bears the burden of establishing the need for an evidentiary hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.1984) (en banc), *cert. denied*, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). However, the Court must hold a hearing in the following situations:

(1) the merits of the factual dispute were not resolved in the state hearing, (2) the state factual determination is not fairly supported by the record as a whole, (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a

---

**4.** For a fuller discussion of *Teague*, see *infra*, p. 601.

**5.** *Ritter* is discussed more extensively below.

substantial allegation of newly discovered factual evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

*Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). Under the circumstances of this case, it appeared that an evidentiary hearing was required as Thomas had made substantial allegations of newly discovered evidence. Accordingly, the Court heard testimony from both sides, regarding execution by electrocution and Alabama's electric chair.

### Evidence Presented

██ The following is a summary of the relevant evidence presented through documents, exhibits, affidavits, depositions, and testimony at the hearing.

Alabama's wooden electric chair is in a separate "execution chamber" with its back to the wall on which the receptacles for the electrical connectors are located. There are four receptacles, arranged two by two. (Photograph, Exhibit 2 to Morse affidavit). To properly connect the chair to the power source the cables should run from the two bottom receptacles to the back of the chair. (Morse affidavit, p. 2, Morse testimony, 7/9/90, Bernstein testimony, 7/9/90, Brooks affidavit, p. 2, Thigpen deposition). The top receptacles lead to a bank of test resistors from which no power can flow. (Leuchter affidavit, p. 3, Bernstein testimony, 7/9/90, Morse testimony, 7/9/90).

If the cables are connected from the top receptacles to the electric chair, no electrical power reaches the chair. (Brooks' affidavit, p. 2, Leuchter affidavit, p. 3, Morse testimony, 7/9/90, Bernstein testimony, 7/9/90).

During the execution of Horace Dunkins, Jr. on July 14, 1989, two cycles of the electric chair were necessary to complete the execution. Near midnight, Dunkins was taken to the chamber, placed in the chair, and prepared for execution. The switch was thrown, and the electrical power source proceeded through its cycle. After the cycle was completed, attending physicians found that Dunkins was not dead. The switch was thrown again, and after the second cycle the attending physicians found that Dunkins was dead. (Affidavits of Vanlandingham, and Classen, Deposition of Thigpen).

Lt. Robert Skipper and Lt. David Craft were the prison officials responsible for connecting the electric chair to the wall for the execution of Horace Dunkins on July 14, 1989. Each man states that they mistakenly connected the cables from the chair to the wrong two receptacles on the wall. (Skipper affidavit, p. 3, Craft affidavit, p. 2).

Dr. Michael S. Morse (biomedical engineer) made an affidavit, and gave testimony at the hearing. Dr. Morse tested the electric chair after the Dunkins execution, and found that when hooked up in the way that it had been during the first cycle at the Dunkins execution, the chair received no electricity. Morse's tests established that any report that an electrical charge had been delivered to the chair during the first cycle was in error.

Two doctors were present at the execution, Dr. John A. Vanlandingham, and Dr. Paul Lewis Classen, witnessed the proceedings, and examined Dunkins. During the first cycle, each doctor noticed Dunkins' fist clench slightly, but saw no other reaction. Dr. Vanlandingham had witnessed two other executions. At the first cycle, Vanlandingham did not see the strong contraction he had seen in each of the other executions he had witnessed. (Vanlandingham affidavit, p. 1). Vanlandingham and Classen both stated that after the first cycle, they examined Dunkins, and found that he was alive, and that his respiration and pulse were normal, but that he was unconscious, and that he did not react to pain. (Vanlandingham affidavit, Classen affidavit).

Horace Dunkins Sr., stated that when the yellow lights came on in the execution chamber (signifying that the power had been turned on) he saw his son jump. (Dunkins' affidavit, p. 2).

Morris Thigpen (Commissioner of Corrections, Alabama Department of Corrections) testified that Dunkins made no movement during the first cycle. (Thigpen deposition, p. 11).

Several people not present at the execution have examined the reports of those who were there, and have given opinions about Dunkins' condition during the proceedings, and about the results of the aborted initial attempt to execute Dunkins.

Dr. Hamp H. Green (neurologist) testified in deposition that he talked with Drs. Vanlandingham and Classen, and reviewed their affidavits, and that he talked with Warden Jones. He holds the opinion that the first attempted electrocution did not, in fact, throw any electrical current into Dunkins. Green is of the opinion that Dunkins fainted from stress, and never recovered from his faint. Green supports this opinion with Classen and Vanlandingham's statements about Dunkins' condition after the first cycle. Dr. Green further opines that Dunkins remained unconscious throughout the remaining proceedings, and that the second cycle of electricity (the first jolt) rendered Dunkins dead instantaneously and that he suffered no pain. Further, Dr. Green opined that as electricity travels much faster than pain impulses, Dunkins brain was dead before he was able to sense any pain.

Dr. Robert Kirschner (forensic pathologist) made an affidavit containing his opinion that Dunkins was subjected to two jolts of electricity, the first of which was painful, but not deadly. Kirschner opines that this first, low voltage electric shock caused Dunkins' unconsciousness, and likely caused him pain. (Kirschner affidavit, pp. 14). Alternatively, Kirschner opines that Dunkins was subjected to a "mock execution" which constituted psychological torture. (p. 16). Dr. Kirschner was not present at the execution, and relied on incorrect reports that Dunkins was subjected to two jolts of electricity.

Dr. James Merikangas (psychiatrist and neurologist) opined that Dr. Green had insufficient data from which to draw his conclusions. Merikangas was not present at

Dunkins' execution, and did not examine the body. He read the autopsy report, the affidavits of Horace Dunkins, Sr., Drs. Classen and Vanlandingham, and Green, and various newspaper articles about the execution. Merikangas disputes Green's opinion that Dunkins fainted, stating his opinion that Dunkins was "literally burned to death after receiving a painful electric shock that was inadequate to kill him and after being paralyzed and unable to respond by the passage of current through his spinal cord." (Merikangas affidavit, p. 2). Merikangas also holds the opinion that Dunkins was subjected to "unimaginable pain and suffering." (Merikangas affidavit, p. 3). However, Merikangas assumes both that "in a properly performed execution death occurs from cardiac arrest and the cessation of blood flow to the brain," (Merikangas affidavit p. 3), and that Dunkins received two jolts of electricity. The Court finds both of these assumptions incorrect. First, in a properly performed execution, the initial application of electricity is meant to cause instant brain death. Cardiac arrest is secondary. Second, in Dunkins' case, there was no "first jolt" of electricity. Because Dr. Merikangas' conclusions regarding the circumstances of Dunkins' electrocution and death are based on incorrect assumptions of fact, the Court finds Dr. Merikangas' opinions valueless.

Dr. Morse and Bernstein testified that the amount of electricity delivered to Dunkins on the second cycle (first jolt) was sufficient to render him instantly brain dead. (Testimony at July 9, 1990 hearing).

After the Dunkins execution, Warden Jones, Holman Prison, directed that the cables be attached to the wall receptacles in such a way that the cables cannot be removed from the bottom receptacles. (Jones affidavit, p. 2). James Brooks, Jr., Holman's electrician supervisor, made the directed adjustments, and the jacks which are fastened to the wall panel cannot now be removed from their receptacles. (Jones affidavit, p. 2, Brooks affidavit, p. 2 & 3, Thigpen deposition, p. 15, Leuchter affidavit, p. 3, Morse testimony).

Fred A. Leuchter (engineer engaged in the design and manufacture of "execution hardware") states that Alabama's execution equipment is old, but that it is the same type of equipment most electrocution states use to carry out their electrocutions. Leuchter opines that, properly operated, Alabama's electric chair can be used to carry out a humane execution. (Leuchter affidavit, p. 4). Leuchter also states that the old electric chair is being replaced because of the difficulty in getting spare parts, and because the newer electric chair will be easier to use.

Dr. Morse testified that he examined the electric chair on July 5, 1990, that it was in satisfactory working order, and that the design, though simple, is adequate to enable the Alabama Department of Corrections to carry out a humane execution. (Morse deposition, and Morse testimony at 7/9/90 hearing).

Dr. Bernstein testified that Alabama's execution procedures are inadequate because the electric chair is antiquated ("an accident waiting to happen") and because the people who operate it do not know what they are doing. Bernstein holds the opinion that better trained personnel would not have made the mistake made by Craft and Skipper, and that there is a substantial likelihood of some other mishap occurring during future executions.

Some of the documentary evidence and live testimony tended to show that corpses of prisoners executed in Alabama's electric chair bear unexplained burns. (Richardson Autopsy Report, Dunkins Autopsy Report.)

### Findings of Fact

1. The Court finds that in a properly performed judicial electrocution the initial application of electricity is meant to cause instant brain death. Cardiac arrest is secondary.

2. The Court finds that the electric chair was incorrectly connected on the night of July 14, 1989. As a result of this error, no electrical power reached the chair during the first cycle. Horace Dunkins, Jr. did not receive an electrical shock until the second cycle.

3. The Court finds that Dunkins fainted at the time of the first attempt at his execution and never regained consciousness. Consequently, the Court finds no support for Thomas' contention that Dunkins suffered from being made to go through a "mock execution." Further, the Court finds no credible evidence that Dunkins suffered any pain during the actual electrocution process as during the one time electricity passed through his body, * * * Dunkins was instantaneously rendered brain dead. Consequently, he was unable to feel pain, and did not suffer.

4. The Court finds that the error which occurred during the Dunkins execution cannot be repeated.

5. The Court finds that following the Dunkins execution, the electric chair was tested on two different occasions by a competent engineer for a total of 30 cycles and was found to work properly.

6. The Court finds that although the electric chair is old, it is in proper working condition and likely to remain so for the foreseeable period of its use; that the prison's personnel responsible for the operation of the chair are capable of carrying out their duties with respect to this and further executions, and that the likelihood of an error similar to that which occurred during the Dunkins execution is remote and not likely to occur in the foreseeable future.

7. The Court finds that some corpses of executed inmates bear unexplained burns. However, the Court finds that the State has balanced its desire to bring about instant brain death at the time of an execution with its desire that the corpse of the person executed be free from burns, and that the State attempts to lean toward the use of an amount of electrical current which is more likely to produce instantaneous brain death and, therefore, be painless, than to produce a burn-free corpse. This Court concurs in the State's approach to this balancing process, and finds it to be humane.

8. The Court further finds that Alabama's prison officials are capable of using

the present electric chair to carry out Thomas' execution humanely.

### Conclusions of Law

1. Although the Eighth Amendment prohibits cruel and unusual punishment, *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), execution by electrocution is not inherently unconstitutional, *see In re Kemmler,* 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890). Although it is clear that death by torture is unacceptable under the Eighth Amendment, in the instant action, the Court is unable to find any credible evidence that Alabama prison inmates who have been executed have suffered pain. Neither does the Court find any credible evidence that prison inmates, including Thomas, who are to be executed in this electric chair in the foreseeable future will suffer any pain. In fact, the Court has heard no credible evidence that prisoners executed in Alabama feel any pain at all. Quite the contrary, the Court has heard ample testimony that death by electrocution in Alabama's electric chair is painless.

2. Regarding Thomas' contention that in light of the circumstances of Dunkins' execution and other executions since Evans, his own execution in Alabama's electric chair would constitute cruel and unusual punishment, the Court notes that similar claims have consistently been rejected.

In *State of Louisiana v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947), the United States Supreme Court held that carrying out an execution of an attempted murderer, after the first execution attempt had failed because of a mechanical defect in the electric chair, was not cruel and unusual punishment. In that case Louisiana's electric chair had malfunctioned on the first execution attempt. Prison officials returned the prisoner to his cell, and he filed a habeas corpus petition, arguing among other things, that it was cruel and unusual to force him to prepare for death twice. In rejecting his claim, the Supreme Court noted that "[t]he cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely." *Id.* 67 S.Ct. at 376.

John Louis Evans was the first inmate executed in Alabama after *Furman.* During that execution, Evans was given three separate jolts of electricity because attending doctors found heartbeats after the first two jolts. Because the electrode connectors were not secure, arcing and burning occurred during the process, and Evans sustained third and fourth degree burns. Evans' co-defendant, Ritter, raised the eighth amendment issue in his federal habeas petition, arguing that the circumstances of Evans' execution constituted cruel and unusual punishment. *Ritter v. Smith,* 568 F.Supp. 1499, 1526 (S.D.Ala. 1983), *aff'd in relevant part rev'd in part on other grounds,* 726 F.2d 1505, 1519 (11th Cir.1984), *cert. denied* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

In *Ritter* the District Court found that execution in Alabama's electric chair did not violate the Eighth Amendment. Further, the Court specifically found that Evans' execution was not cruel and unusual punishment and did not violate the Eighth Amendment as there was no wanton infliction of pain, because Evans was unconscious after the first jolt, and consequently did not feel the other two. The court reached this conclusion after finding that electrocution involves "an instantaneous blocking of any sensory perceptions or instantaneously rendering the person unconscious so that he was unable to feel any pain." *Ritter* at 1526. The Court expressly noted the possibility that the chair might not work at some point in the future, but cited *Resweber* for the proposition that that fact alone would not render the punishment unconstitutional. The Court noted that three separate jolts of electricity were unusual, but found no indication that any pain was involved. Neither did the burns on Evans body constitute cruel and unusual punishment; "although the law is not clear that there would be limits of mutilation of the body that might ultimately offend the Eighth Amendment, the degree of extent

of burns in this case does not in my judgment, rise to the point of that kind of offensive mutilation of the body. At least in the situation where there is no indication of any perception of pain by the person, and here again, we come back that he would not have felt any of that." *Ritter*, 568 F.Supp. at 1527. The Eleventh Circuit adopted the district court's opinion on this issue. *Ritter v. Smith*, 726 F.2d 1505, 1519 (11th Cir.1984), *cert. denied* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

After hearing the evidence, the Court considers that Thomas has not shown that his situation is materially different from Ritter's. After extensive review of the evidence, the Court concluded that Dunkins' execution did not violate the Eighth Amendment. Lacking any credible evidence that painful executions are being carried out in Alabama, the Court finds no merit to Thomas' contention that his execution in Alabama's electric chair would violate the Eighth Amendment.

3. *Ritter* left open the possibility that some unspecified degree of burning on prisoner's bodies might state a constitutional violation. However, the Court finds that the burns to the bodies of those executed were sustained after the brains were dead, when the prisoners were no longer able to feel pain. In these circumstances, the Court finds that any burning or mutilation of executed inmates bodies does not state a constitutional violation. Lacking any credible evidence that such burning may occur before brain death, or that Thomas will feel pain, the Court rejects Thomas' argument that possible burning of his body attendant to his execution would violate the Eighth Amendment.

Accordingly, the Court found that Thomas was not entitled to issuance of the writ on any of the grounds asserted in the petition for writ of habeas corpus, and that the petition was due to be dismissed.

**6.** Thomas was first convicted of the murder of Quenette Sheehan in 1977, and this matter has been in almost continual litigation since then. Six courts have reviewed his case, during two

## STAY OF EXECUTION

 Under 28 U.S.C. § 2251 a federal court may stay an execution pending determination of a § 2254 petition. In determining whether to grant a stay, courts apply a four part test;

> whether the movant has made a showing of likelihood of success on the merits, and of irreparable injury if the stay is not granted, whether the stay would substantially harm the other parties, and whether granting the stay would serve the public interest.

*Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir.1987). In this case, Thomas has clearly shown that he would suffer irreparable injury if the stay is not granted, should his claims prove meritorious. On the other hand, the State of Alabama and the public in general have an interest in seeing an end to this litigation.[6] Finally, and most importantly, Thomas has not succeeded on the merits in this Court, and he has not shown any likelihood of success on the merits on appeal. After careful application of these factors to the facts of this case, the Court denies Thomas' motion for a stay of execution.

## CERTIFICATE OF PROBABLE CAUSE

 Federal Rule of Appellate Procedure 22(b) requires that an applicant for a writ of habeas corpus must obtain a certificate of probable cause in order to appeal the district court's denial of the writ.

The Supreme Court has said that the district court should grant the certificate when the petitioner shows that he will raise a question of substance on appeal. *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, note 4, 77 L.Ed.2d 1090, 1104 (1983).

> In requiring a "question of some substance" or a "substantial showing of the denial of a federal right," obviously the petitioner need not show that he should prevail on the merits.... Rather, he must demonstrate that the issues are debatable among jurists of reason; that

trials, two appeals, two coram nobis petitions and two federal habeas petitions. After such protracted scrutiny, it is highly unlikely that constitutional errors remain undiscovered.

a court could resolve the issues [in a different manner]; or that the questions "are adequate to deserve encouragement to proceed further."

After careful consideration, the Court concludes that Thomas' petition did not raise a question of substance which deserves encouragement to proceed further. Accordingly, Thomas' motion for issuance of a certificate of probable cause is denied.

## CONCLUSION

The petition for writ of habeas corpus is DISMISSED. Judgment will be entered accordingly by separate document.

The motion for stay of execution is DENIED.

The motion for a certificate of probable cause is DENIED.